**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Marc A Wichansky, | No. CV-13-01208-PHX-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| David T Zowine, et al., | |
| Defendants. | |

Defendants David Zowine, Karen Zowine, and Zoel Holding Corporation have filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Doc. 12. Defendants Martha Leon, Charles Johnson, Patricia Gonzalez, Pat Shanahan, Sarah Shanahan, Mike Ilardo, Rio Mayo, Michael Narducci, and Brett Costello ("Employee Defendants") have joined the motion. Doc. 13. The motions are fully briefed.[1] For the reasons that follow, the Court will grant Defendants' motion.[2]

**I.   Background.**

Plaintiff Marc A. Wichansky began this action on June 14, 2013, alleging violations of the anti-retaliation provisions of the False Claims Act ("FCA"),

---

[1] The Court notes that Plaintiff's response fails to comply with the Court's local rules, which require that footnotes use a proportional font of 13 points or greater. LRCiv 7.1(b)(1). In addition, the footnotes in the response are lengthy, and the Court reminds counsel that any argument worth making is worth putting in text. Finally, the Court advises against putting legal citations in footnotes. Because citations are highly relevant in a legal brief, such a practice makes brief-reading difficult.

[2] The requests for oral argument are denied because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

31 U.S.C. § 3729 *et seq.*, violations of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. §§ 1030(a)(2)(C), 1030(a)(4), 1030(a)(5)(C), 1030(b), and violations of Section 10(b) of the Securities Exchange Act of 1934, and rule 10b-5. Doc. 1 at 2. Plaintiff also alleges many claims arising under state law, including breach of fiduciary duty, constructive fraud, defamation, defamation per se, assault, battery, intentional infliction of emotional distress, intentional interference with existing business relations, intentional interference with prospective business relations, unjust enrichment, intrusion upon seclusion, prima facie tort, and aiding and abetting tortious conduct. *Id*. at 38-48.

Plaintiff alleges that in 2006 he and Defendant David Zowine ("Zowine") founded Defendant Zoel Holding Company, Inc. ("Zoel"), a company specializing in employee placement services. *Id*., ¶ 43. Plaintiff owned a 50% interest and served as Zoel's chairman and president. *Id*., ¶ 41. As president, Plaintiff primarily ran Zoel's back office and administrative operations. Zowine also owned 50% and was Zoel's secretary and vice president. *Id*., ¶ 42. Zowine ran sales operations. By 2011, Zoel generated an excess of $40 million in revenues, maintained offices in five states, and employed hundreds of people. *Id*., ¶ 47.

Between December 2010 and January 2011, Plaintiff alleges that Zowine's behavior toward Plaintiff changed dramatically. Zowine began to intimidate, harass, and disparage Plaintiff, members of Plaintiff's family, and any Zoel employees who Zowine believed remained loyal to Plaintiff. *Id*., ¶ 51. Plaintiff alleges that Zowine would scream obscenities at Plaintiff and other Zoel employees while holding or swinging a baseball bat and that Zowine would knowingly express falsehoods about Plaintiff. Zowine's belligerent behavior continued for some time and caused the staff at Zoel to fracture into two camps: those who respected the chain of command and remained loyal to Plaintiff, and those loyal to Zowine and under his immediate influence and command. *Id*., ¶ 62. Zowine's camp, the Employee Defendants, began to be unruly and uncooperative and to engage in obstructive, demeaning, and intimidating conduct. On January 19, 2011, Zowine allegedly attacked and beat Plaintiff on Zoel's premises. In his

capacity as Zoel's president and chairman, Plaintiff caused Zoel to place Zowine on paid administrative leave on January 25, 2011. *Id*., ¶ 74.

Plaintiff alleges that Zowine and the Employee Defendants conspired to operate a secret office at the Regus business center. *Id*., ¶ 88. While Plaintiff and Zowine were attending a court hearing, six of the Employee Defendants forced their way into Zoel's server room and attempted to make a duplicate copy of Zoel's email server and main server. *Id*., ¶ 92. Unable to rapidly copy the server's data, they allegedly ripped servers from the wall and absconded with the servers and over 30 computers. *Id*., ¶ 93. Zowine and the Employee Defendants refused to return the servers or computers. In addition, Zowine subsequently dispatched an expert to Zoel's headquarters who accessed and copied Plaintiff's personal office computer. *Id*, ¶ 105. In order to retrieve information that was vital for the continued operation of Zoel, Plaintiff personally hired a firm specializing in computer forensics to image the stolen devices and paid them $165,934.66. *Id*., ¶¶ 107-11. After this incident, Zowine and the Employee Defendants would routinely leave their secret office and arrive at Zoel unannounced, where they would aggressively threaten, disparage, humiliate, and victimize Plaintiff and other Zoel employees. *Id*., ¶¶ 115-19.

On January 26, 2011, Plaintiff caused Zoel to terminate Zowine's employment. *Id*., ¶ 82. Zowine disputed Plaintiff's authority to terminate his employment in superior court. Zowine prevailed in superior court. *Id*, ¶ 120. Given the immense tension that existed between the parties, Plaintiff concluded that he had no alternative but to seek judicial dissolution of Zoel. *Id*., ¶ 121. Under Arizona law, Zowine elected to buy Plaintiff out in lieu of permitting Zoel to be wound down. *Id*., ¶ 132.

In preparation for the valuation hearing, Plaintiff retained experts who allegedly discovered facts that exposed a fraudulent billing scheme taking place at MGA Home Healthcare LLC ("HHL"), one of Zoel's subsidiaries overseen by Zowine. *Id*., ¶ 133. The sprawling scope of the fraudulent scheme suggested to Plaintiff that Zowine had been intimately involved with it. *Id*., ¶¶ 154-56. Plaintiff claims that upon discovery of

the billing fraud he realized that Zowine's violent and abrasive conduct had been designed from the start to drive Plaintiff from Zoel and dupe him into petitioning for dissolution, thereby enabling Zowine to buy Plaintiff out and prevent anyone from discovering the fraudulent scheme. *Id*., ¶¶ 135-36, 163-64. Accordingly, Plaintiff moved to withdraw his dissolution petition, but the superior court denied his motion. *Id*., ¶ 165-66. A five day valuation proceeding took place in February 2012. In December 2012, the superior court ordered that Zowine be permitted to purchase Plaintiff's shares of Zoel at a price that Plaintiff believed to be materially below their fair value. *Id*., ¶ 173.

**II.   Legal Standard.**

When analyzing a complaint for failure to state a claim to relief under Rule 12(b)(6), the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Legal conclusions couched as factual allegations are not entitled to the assumption of truth, *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009), and therefore are insufficient to defeat a motion to dismiss for failure to state a claim, *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010). To avoid a Rule 12(b)(6) dismissal, the complaint must plead enough facts to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).

**III.   Analysis.**

    **A.   False Claims Act.**

Defendants assert that Plaintiff's claim arising under the False Claims Act must be dismissed because Plaintiff has failed to plead a sufficient employment relationship or protected activity in furtherance of a *qui tam* action or other efforts to stop FCA violations. Doc. 12 at 6-9. The Court will address both assertions.

The FCA prohibits persons from submitting fraudulent records or claims to the

United States. 31 U.S.C. § 3729(a)(1). The FCA imposes civil liability on any person who knowingly uses a "false record or statement" to get fraudulent claims paid or approved by the government. *Id.* To encourage insiders who are aware of fraud to come forward, the FCA creates a private cause of action for "[a]ny employee, contractor, or agent" who is "discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment" in response to lawful acts done in furtherance of a *qui tam* action or other efforts to stop FCA violations. *Id.* § 3730(h)(1). The purpose of the anti-retaliation provision is to prevent companies from using the threat of retaliation to silence whistleblowers and thereby "make employees feel more secure in reporting fraud to the United States." *Cell Therapeutics, Inc. v. Lash Grp., Inc.*, 586 F.3d 1204, 1206 (9th Cir. 2009) (internal quotations omitted).

To make out a §3730(h) retaliation claim under the FCA, a plaintiff must prove three elements: (1) that the employee engaged in activity protected under the statute; (2) that the employer knew that the employee engaged in protected activity; and (3) that the employer discriminated against the employee because he engaged in protected activity." *United States ex rel. Hopper v. Anton*, 91 F.3d 1261, 1269 (9th Cir. 1996).

### 1. Employment Relationship.

Defendants assert that implicit in every retaliation claim under the FCA is a threshold showing that the plaintiff is an "employee, contractor, or agent" of the defendant and that the defendant is plaintiff's "employer." Doc. 12 at 6; *see Moore v. Cal. Inst. Tech. Jet Propulsion Lab*, 275 F.3d 838, 844-45 (9th Cir. 2002). Plaintiff disagrees. Plaintiff argues that the Fraudulent Enforcement and Recovery Act of 2009 removed the statutory language that limited liability under the FCA to company employers. Doc. 24 at 13. Plaintiff cites a number of cases to support his position. *See United States ex rel. Moore v. Cmty. Health Servs., Inc.*, No. 3:09cv1127(JBA), 2012 WL 1069474, at *9 (D. Conn. Mar. 29, 2012); *Weihua Hang v. Rector & Visitors of Univ. of Va.*, 896 F.Supp.2d 524, 548 n.16 (W.D. Va. 2012); *Laborde v. Rivera-Dueno*, 719 F.Supp.2d 198, 205 (D.P.R. 2010).

Although the amended provision omits the reference to "his or her employer," Plaintiff is incorrect that this deletion signaled Congress' intention to "grant a federal right of action against anyone and everyone." *Howell v. Town of Ball*, No. 12-951, 2012 WL 6680364, at *2 (W.D. La. Dec. 21, 2012). This circuit looks to legislative history to interpret amended statutory provisions. *See, e.g.*, *Putnam Family P'ship v. City of Yucaipa, Cal.*, 673 F.3d 920, 932 (9th Cir. 2012); *Zuress v. Donley*, 606 F.3d 1249, 1253-55 (9th Cir. 2010); *see also Public Citizen v. United States Dep't of Justice*, 491, U.S. 440, 454 (1989) ("Looking beyond the naked text for guidance is perfectly proper when the result it apparently decrees is difficult to fathom or where it seems inconsistent with Congress' intention."). None of the cases relied on by Plaintiff examined the legislative history underlying the 2009 amendments. Cases that examine the legislative history have concluded that the 2009 amendments were intended to retain the requirement that an FCA defendant have some employer-type relationship with the plaintiff. As the district court explained in *United States ex rel. Abou-Hussein v. Science Applications Int'l. Corp.*, No. 2:09-1858-RMG, 2012 WL 6892716, at *3 (D.S.C. May 3, 2012):

> The 2009 amendments sought to correct what Congress viewed as the unduly narrow interpretation that the courts had given to the term "employee." § 3730(h) was changed from prohibiting retaliation against "any employee" to "any employee, contractor or agent." The statute continued to prohibit any discrimination because of lawful acts in furtherance of the False Claims Act "in the terms and conditions of employment." The Senate Judiciary Committee's Report for the 2009 amendments to the False Claims Act noted what Congress viewed as the narrow decisions of the Third and Fourth Circuits regarding the meaning of the word "employee" and the need to make the statutory changes "[t]o correct this loophole." S. REP. No. 110–507, 110th Cong., 2nd Session (September 25, 2008), 2008 WL 4415147 at *26–27. The Report noted that "by simply including the terms 'government, contractor, or agent' in addition to the term 'employee,'" the statute would "assist individuals who are not technically employees within the typical employer-employee relationship, but nonetheless have a contractual or agent relationship with an employer." *Id*.

*Abou-Hussein*, 2012 WL 6892716, at *3.

The district court in *Abou-Hussein* provided this additional explanation regarding Congress' deletion of the term "employer" from the statute:

> Plaintiff further argues that the 2009 amendment to § 3730(h) removed the term "employer" from the statute, thereby implying that Congress intended to extend the right to pursue retaliation claims against all non-employers. (Dkt No. 41 at 3). Such an interpretation ignores the fact that by necessity the statute could no longer refer only to "employers" since it would apply to entities which had an independent contractor or agency relationship with persons subject to the Act. Thus, the removal of the term "employer" by the 2009 amendment to § 3730(h) was a device to accommodate the broader group of potential plaintiffs who are in employee type roles but who may not be technically be employees and the broader group of potential defendants who are in employer type roles but may not technically be employers. There is no indication in the revised statutory language of the 2009 amendments or in the legislative history that indicate a Congressional intent to broaden the scope of § 3730(h) to include potential defendants who have no employer type relationship with plaintiffs.

*Id.* at *3 n. 4. Other courts agree. *See Lipka v. Advantage Health Grp., Inc.*, No. 13-CV-2223, 2013 WL 5304013, at *12 (D. Kan. Sept. 20, 2013); *Howell*, 2012 WL 6680364; *Aryai v. Forfeiture Support Assocs. LLC*, 10-cv-08952, 2012 U.S. Dist. LEXIS 125227, at *27 (S.D.N.Y. Aug. 27, 2012).

The Court agrees with these decisions. The 2009 amendments were intended to broaden the scope of those protected from violations of the FCA, rather than those who may be held liable for such violations. FCA defendants must have some employer-type relationship with the plaintiff.

Defendants assert that they have no such relationship with Plaintiff. In response, Plaintiff argues that FCA claims are not limited to employer-type defendants, but he does not argue that Defendants had such a relationship with him. Doc. 24 at 13-14. Plaintiff's complaint does not allege that he acted as an employee, contractor, or agent for Zowine or the Employee Defendants. Moreover, Plaintiff's complaint alleges that he was the

1 president, chairman, and 50% owner of Zoel, and does not allege the actions of Zowine or the Employee Defendants were taken on behalf of or with the authorization of Zoel. The Court concludes that Defendants were not in an employer-type relationship with Plaintiff, and that he therefore cannot assert an FCA claim against them.

**2.   Protected Activity and Causal Connection to Retaliation.**

Defendants argue that Plaintiff has made no allegations that he took any action that could plausibly be construed as a precursor to a viable FCA action.  Doc. 12 at 10; Doc. 29 at 3.  Plaintiff rejoins that district courts construing the amended provisions have affirmed FCA retaliation claims where the alleged protected activity was an internal investigation and report of suspected fraudulent activity, much like the investigation that Plaintiff attempted to set in motion.  Doc. 24 at 12; *see, e.g.*, *United States ex rel. Moore*, 2012 WL 1069474, at *9 (finding that allegations of internal investigation of fraudulent Medicare and Medicaid billing practices meet § 3730(h)'s protected activity element). All of the authorities that Plaintiff relies upon are inapposite, however, because they each involve individuals who engaged in protected activity and who were subsequently terminated or otherwise retaliated against as a result of the protected activity.  Plaintiff has not alleged that he engaged in any protected activity until after the alleged retaliation occurred.  Plaintiff's allegation that he instituted an investigation of HHL's billing practices in 2010 does not suffice.  He has not alleged that he suspected that HHL had engaged in fraudulent conduct before the retaliatory action was taken.  He had not commenced an investigation seeking to ferret out fraud or otherwise complained of fraud at HHL as required by *Hopper* until after the alleged adverse employment action occurred.  91 F.3d at 1265-66; *Moore*, 275 F.3d at 845 ("[A]n employee engages in protected activity where (1) the employee in good faith believes, and (2) a reasonable employee in the same or similar circumstances might believe, that the employer is possibly committing fraud against the government."); *U.S. ex rel. Patton v. Shaw Servs., L.L.C.*, 418 Fed.Appx. 366, 372 (5th Cir. 2011) ("For internal complaints to constitute protected activity "in furtherance of" a *qui tam* action, the complaints must concern false

or fraudulent claims for payment submitted to the government."). Nor has Plaintiff alleged that Zoel or any other Defendant was aware that he was investigating fraud at HHL before the retaliatory action took place. *See Hopper*, 91 F.3d at 1269 (holding that an employee is entitled to whistle blower protection only if "the employer is aware that the employee is investigating fraud."). In fact, Plaintiff alleges that he uncovered evidence of fraud "for the first time" after he retained several experts to gather evidence and testify at the valuation hearing in superior court. Doc. 1 at 23. Plaintiff does not allege, nor do any facts support an inference, that he intended to institute an FCA action against Zoel or otherwise report the fraud to the government until after it was apparent that he would no longer be affiliated with Zoel. Plaintiff therefore fails to allege facts necessary to support the elements of a retaliation action as set forth in *Hopper*. 91 F.3d at 1269.

### B.   Computer Fraud and Abuse Act.

Defendants assert that Plaintiff's CFAA claim must be dismissed because Plaintiff has failed adequately to allege that Defendants accessed any protected computer without authorization or that Plaintiff suffered any cognizable loss for such access, and that Plaintiff's claim is barred by the statute of limitations. Doc. 12 at 11. Because the Court finds that Plaintiff has failed to plead facts adequate to establish that Defendants were not authorized to access the computers, the Court will not reach Defendants' other arguments.

Each of Plaintiff's CFAA claims requires that Plaintiff plead facts demonstrating that Defendants accessed Zoel's computers "without authorization" or in a manner that exceeds the authorization that was granted. *LVRC Holdings v. Brekka*, 581 F.3d 1127, 1132 (9th Cir. 2009). Plaintiff alleges that Defendants accessed Zoel's proprietary information "without authorization or in excess of their authorization." Doc. 1 at 18. He has pled no facts, however, suggesting that Zowine, as co-founder and vice president of Zoel, was not authorized to access all company information and give authorization to access Zoel's proprietary information to the Employee Defendants. To survive

1 Defendants' motion to dismiss, Plaintiff must allege facts beyond a bare recitation of the statutory elements. *Iqbal*, 556 U.S. at 680. The Court concludes, therefore, that it must dismiss Plaintiff's CFAA claims.

### C. Securities Fraud.

Defendants assert that Plaintiff's securities fraud claim must be dismissed because Plaintiff has failed to plead that Defendants made a material misrepresentation or omission in connection with the purchase or sale of a security, or that Plaintiff suffered any economic loss. Doc. 12 at 15-16. Because the Court finds that Plaintiff has failed to allege that any misrepresentation was made in connection with the purchase or sale of a security, the Court need not address Defendants' other argument.

Section 10(b) makes it "unlawful for any person, directly or indirectly . . . [t]o use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered . . . any manipulative or deceptive device or contrivance in contravention of [the SEC's rules and regulations]." 15 U.S.C. § 78j. "Rule 10b-5 encompasses only conduct already prohibited by § 10(b)." *Stoneridge Inv. Partners v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 157 (2008). In this circuit, the fraud in question "must relate to the nature of the securities, the risks associated with their purchase or sale, or some other factor with similar connection to the securities themselves. While the fraud in question need not relate to the investment value of the securities themselves, it must have more than some tangential relation to the securities transaction." *Ambassador Hotel Co. v. Wei-Chuan Inv.*, 189 F.3d 1017, 1026 (9th Cir. 1999).

Plaintiff has not pled facts sufficient to meet this standard. He has not alleged that Zowine or any other Defendant made any false statements regarding the nature of Zoel's stock, risks associated with their purchase or sale, or some other factor with a similar connection to Zoel's stock. Plaintiff's theory, as it appears in his complaint, is that Zowine engaged in a long-term strategy of harassment and intimidation aimed at inducing Plaintiff to petition the superior court for dissolution of Zoel. Plaintiff asserts

that Zowine's efforts to induce Plaintiff to part with his stock was "an essential part" of Zowine's fraud, and that these efforts pull this case into the context of securities fraud. Dos. 24 at 19.

These facts, even taken as true, fail to state a claim arising under § 10(b) and Rule 10b-5. The alleged fraud was not related to a securities transaction. It was, Plaintiff claims, a campaign to get him to seek dissolution of the corporation and part with his stock at whatever fair market value the superior court established. Whether such conduct gives rise to liability under some other legal theory is not for the Court to decide today, but it clearly is not securities fraud.

### D. Remaining State Law Claims.

The Court may decline to exercise supplemental jurisdiction over state-law claims if it has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c); *see also Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1000 (9th Cir. 1997) (en banc) (district court has discretion to keep, or decline to keep, state law claims under conditions set forth in § 1367(c)). With Plaintiff's federal claims dismissed, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. The Court will therefore dismiss Plaintiff's state law claims without prejudice.

## IV. Leave to Amend.

Plaintiff seeks leave to amend. Doc. 24 at 20. Rule 15 makes clear that the Court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The policy in favor of leave to amend must not only be heeded, *see Foman v. Davis*, 371 U.S. 178, 182 (1962), it must be applied with extreme liberality, *see Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 880 (9th Cir. 2001). The Court may deny a motion to amend if there is a showing of undue delay or bad faith on the part of the moving party, undue prejudice to the opposing party, or futility of the proposed amendment. *See Foman*, 371 U.S. at 182. Defendants have not identified any *Foman* factors suggesting that the Court should deny Plaintiff's request for leave to amend. Accordingly, the Court will grant leave to amend.

**IT IS ORDERED** that Defendants David Zowine, Karen Zowine, and Zoel Holding Corporation motion to dismiss (Doc. 12) is **granted**. The Employee Defendants' motion to dismiss (Doc. 13) is also **granted**. Plaintiff shall file an amended complaint on or before **February 7, 2014**.

Dated this 24th day of January, 2014.

David G. Campbell
United States District Judge