**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Marc A Wichansky, | No. CV-13-01208-PHX-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| David T Zowine, et al., | |
| Defendants. | |

Defendants David Zowine, Karen Zowine, Zoel Holding Company, Inc., and MGA Home Healthcare LLC, along with Martha Leon, Charles Johnson, Patricia Gonzalez, Pat Shanahan, Sarah Shanahan, Mike Ilardo, Alisa Ilardo, Rio Mayo, Michael Narducci, Brett Costello, Andrea Costello, Justin Grant, Kai Knowlton, and Don Maniccia ("Employee Defendants"), have filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Doc. 61.  The motions are fully briefed. For the reasons that follow, the Court will grant Defendants' motion in part.

## I.     Background.

Plaintiff Marc Wichansky began this action on June 14, 2013, alleging violations of the anti-retaliation provisions of the False Claims Act ("FCA"), 31 U.S.C. § 3729, violations of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. §§ 1030(a)(2)(C), 1030(a)(4), 1030(a)(5)(C), 1030(b), and violations of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5.  Doc. 1 at 2.  Plaintiff also alleged many claims arising under state law, including breach of fiduciary duty, constructive fraud, defamation, defamation per se, assault, battery, intentional infliction of emotional

1    distress, intentional interference with existing business relations, intentional interference

2    with prospective business relations, unjust enrichment, intrusion upon seclusion, prima

3    facie tort, and aiding and abetting tortious conduct.  *Id*. at 38-48.  This Court granted

4    Defendants' motion to dismiss the Plaintiff's original complaint with leave to amend on

5    January 24, 2014.  Doc. 49.  Plaintiff then filed a 93-page First Amended Complaint,

6    alleging the previous claims and adding a claim for violation of the obstruction of justice

7    provision of 42 U.S.C. § 1985(2).  Doc. 54.

8         This case is only the latest in a longstanding and bitter dispute between the parties.

9    Plaintiff alleges that in 2006 he and Defendant David Zowine ("Zowine") founded

10   Defendant Zoel Holding Company, Inc. ("Zoel"), a company specializing in employee

11   placement services.  *Id*., ¶¶ 45-46.  Plaintiff owned a 50% interest and served as Zoel's

12   chairman and president.  *Id*., ¶¶ 41, 48.  Plaintiff's employment duties and responsibilities

13   included administrative operations and the management or supervision of day-to-day

14   business affairs.  Doc. 54, ¶¶ 49-50.  Zowine also owned 50% and was Zoel's secretary

15   and vice president.  *Id.*, ¶¶ 41, 51.  Zowine ran sales operations.  By 2011, Zoel generated

16   in excess of $40 million in revenues, maintained offices in five states, and employed

17   hundreds of people.  *Id*., ¶ 54.

18        Between December 2010 and January 2011, Plaintiff alleges that Zowine's

19   behavior toward Plaintiff changed dramatically.  *Id*., ¶ 80.  Zowine began to intimidate,

20   harass, and disparage Plaintiff, members of Plaintiff's family, and any Zoel employees

21   whom Zowine believed remained loyal to Plaintiff.  *Id*., ¶ 81.  Plaintiff alleges that

22   Zowine would scream obscenities at Plaintiff and other Zoel employees while holding or

23   swinging a baseball bat and that Zowine would knowingly express falsehoods about

24   Plaintiff.  *Id*., ¶¶ 83, 86.  Zowine's belligerent behavior continued for some time and

25   caused the staff at Zoel to fracture into two camps: those who respected the chain of

26   command and remained loyal to Plaintiff and those loyal to Zowine and under his

27   immediate influence and command.  *Id*., ¶ 88.  Zowine's camp, the Employee

28   Defendants, began to be unruly and uncooperative and to engage in obstructive,

demeaning, and intimidating conduct. *Id.*, ¶ 89.  On January 19, 2011, Zowine allegedly attacked and beat Plaintiff on Zoel's premises.  *Id.*, ¶ 95.  In his capacity as Zoel's president and chairman, Plaintiff caused Zoel to place Zowine on paid administrative leave on January 25, 2011. *Id.*, ¶ 101.

Plaintiff alleges that Zowine and the Employee Defendants conspired to operate a secret office at the Regus business center.  *Id.*, ¶ 115.  While Plaintiff and Zowine were attending a court hearing, six of the Employee Defendants forced their way into Zoel's server room and attempted to make a duplicate copy of Zoel's email server and main server.  *Id.*, ¶ 126.  Unable to rapidly copy the server's data, they allegedly ripped servers from the wall and absconded with the servers and over 30 computers.  *Id.*, ¶¶ 127-28. Zowine and the Employee Defendants refused to return the servers or computers.  In addition, Zowine subsequently dispatched an expert to Zoel's headquarters who accessed and copied Plaintiff's personal office computer.  *Id.*, ¶ 145.  In order to retrieve information that was vital for the continued operation of Zoel, Plaintiff personally hired a firm specializing in computer forensics to image the stolen devices and paid them $165,934.66. *Id.*, ¶¶ 147, 151.  After this incident, Zowine and the Employee Defendants would routinely leave their secret office and arrive at Zoel unannounced, where they would aggressively threaten, disparage, humiliate, and victimize Plaintiff and other Zoel employees. *Id.*, ¶¶ 155-58.

On January 26, 2011, Plaintiff caused Zoel to terminate Zowine's employment. *Id.*, ¶ 112.  Zowine disputed Plaintiff's authority to terminate his employment in state court.  Zowine prevailed in state court.  *Id*, ¶ 160.  Given the immense tension that existed between the parties, Plaintiff concluded that he had no alternative but to seek judicial dissolution of Zoel.  *Id.*, ¶ 163.  Under Arizona law, Zowine elected to buy Plaintiff out in lieu of permitting Zoel to be wound down. *Id.*, ¶ 173.

In preparation for the Zoel valuation hearing, Plaintiff retained experts who allegedly discovered facts that exposed a fraudulent billing scheme taking place at MGA Home Healthcare LLC ("HHL"), one of Zoel's subsidiaries overseen by Zowine.  *Id.*,

¶ 174.  The sprawling scope of the fraudulent scheme suggested to Plaintiff that Zowine had been intimately involved with it.  *Id.*, ¶¶ 178-81.  Plaintiff claims that upon discovery of the billing fraud he realized that Zowine's violent and abrasive conduct had been designed from the start to drive Plaintiff from Zoel and dupe him into petitioning for dissolution, thereby enabling Zowine to buy Plaintiff out and prevent anyone from discovering the fraudulent scheme.  *Id.*, ¶¶ 175-76, 194-95.  Plaintiff moved to withdraw his dissolution petition and set aside Zowine's election to purchase Plaintiff's shares, but the state court denied his motions.  *Id.*, ¶¶ 195-96.

A five-day valuation proceeding took place in February 2012.  In December 2012, the state court ordered that Zowine be permitted to purchase Plaintiff's shares of Zoel at a price Plaintiff believed to be materially below fair value.  *Id.*, ¶ 203.  Plaintiff claims that Zowine and certain Employee Defendants have conspired since June 2013 to deter Plaintiff from seeking redress from the state and federal courts through a systematic campaign of escalating intimidation, harassment, physical violence, and disparagement.  *Id.*, ¶ 451.

## II.     Legal Standard.

When analyzing a complaint for failure to state a claim to relief under Rule 12(b)(6), the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party.  *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).  Legal conclusions couched as factual allegations are not entitled to the assumption of truth, *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009), and therefore are insufficient to defeat a motion to dismiss for failure to state a claim, *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010).  To avoid a Rule 12(b)(6) dismissal, the complaint must plead enough facts to state a claim to relief that is plausible on its face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).

III.    **Analysis.**

    A.    **Retaliation in Violation of the False Claims Act.**

Plaintiff asserts a claim for retaliation under the FCA.  The Ninth Circuit has explained this cause of action as follows:

> The False Claims Act protects "whistle blowers" from retaliation by their employers.  Thus, the False Claims Act makes it illegal for an employer to "discharge[], demote[], suspend[], threaten[], harass[], or in any other manner discriminate[] against [an employee] in the terms and conditions of employment . . . because of lawful acts done by the employee . . . in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section . . . ."  31 U.S.C. § 3730(h).  An employee must prove three elements in a § 3730(h) retaliation claim: (1) that the employee engaged in activity protected under the statute; (2) that the employer knew that the employee engaged in protected activity; and (3) that the employer discriminated against the employee because she engaged in protected activity.

*Moore v. California Inst. of Tech. Jet Propulsion Lab.*, 275 F.3d 838, 845 (9th Cir. 2002) (citation omitted).

As is clear from this Ninth Circuit explanation, the FCA retaliation provision protects employees from retaliation by employers, not retaliation by fellow employees.  A retaliation plaintiff must therefore show that he had some employment relationship with the retaliation defendant, engaged in protected activity of which the employer-defendant was aware, and suffered discrimination from the employer as a result.  Defendant argues that Plaintiff was not in an employment relationship with Zowine or the Employee Defendants, and has not alleged retaliation at the hands of his employers.  The Court agrees.

    1.    **Employment Relationship.**

Plaintiff asserts retaliation claims against Zowine and the Employee Defendants on the theory that they were his de facto employers.  Plaintiff argues that a de facto employment relationship is a legally viable theory under § 3730(h).  He relies on two

- 5 -

cases to support his position.  *See McKenna ex rel. U.S. v. Senior Life Mgmt., Inc.*, 429 F. Supp. 2d 695, 700 (S.D.N.Y. 2006) (denying defendant's motion to dismiss in order to resolve questions of fact regarding whether defendant qualified as a de facto employer); *see also Mruz v. Caring, Inc.*, 991 F. Supp. 701, 709-10 (D.N.J. 1998) (holding that a motion to dismiss was improper as to an individual defendant who allegedly dominated and dictated the actions of corporations and boards and conducted the corporations' affairs in a way that benefited her personally).

Defendants assert that the term "employer" under § 3730(h) of the FCA does not include de facto employers.  Doc. 61 at 4.  The Court agrees.  Numerous cases have held that individuals like Zowine or the Employee Defendants are not an "employer" for purposes of § 3730(h) retaliation claims.  *See U.S. ex rel. Friddle v. Taylor, Bean & Whitaker Mortg. Corp.*, No. 1:06-cv-3023-JEC, 2012 WL 1066510, at *5-6 (N.D. Ga. Mar. 27, 2012); *Overton v. Bd. of Comm'rs of Rio Blanco Cnty.*, No. 05-CV-00186-WDM-PAC, 2006 WL 2844264, at *4-5 (D. Colo. Sept. 29, 2006); *Orell v. Umass Memorial Medical Center, Inc.*, 203 F. Supp. 2d 52 (D. Mass. April 29, 2002); *U.S. ex rel. Harris v. EPS, Inc.*, No. 05-CV-212, 2006 WL 1348173, at *7 (D. Vt. May 16, 2006).

As a general rule "Congress intends to incorporate the well-settled meaning of the common-law terms it uses."  *See, e.g.*, *Neder v. U.S.*, 527 U.S. 1, 21 (1999).  Absent clear statutory language to the contrary, the Court assumes Congress intended "employer" in § 3730(h) to have its ordinary, common law meaning.  *Overton*, 2006 WL 2844264, at *5 (quoting *U.S. ex rel. Siewick v. Jamieson Science and Engineering, Inc.*, 322 F.3d 738, 740 (D.C. Cir. 2003)).  Congress could have provided a remedy against managers or fellow employees who control the operation of an employer had it intended to do so. *Friddle*, 2012 WL 1066510, at *6.  Congress provided no such remedy.

The Court holds, consistent with the majority of cases, that the term "employer" under § 3730(h) does not include individual co-employees.  Zowine and the Employee Defendants are not Plaintiff's employers, and Plaintiff's FCA retaliation claims against them will therefore be dismissed.

### 2.     Retaliation by Zoel.

To give rise to an FCA retaliation claim, the actions must have been those of the employer.  Thus, the various acts of retaliation alleged in the complaint are actionable only if they were undertaken by Zoel.  The complaint makes abundantly clear, however, that all of the acts of retaliation were done by Zowine and the Employee Defendants.  *See*, *e.g.*, Doc. 54, ¶¶ 80-160.  The alleged acts of retaliation include verbal threats, obscenities, defamation, threats to family members, harassment, and even a physical assault, all done by Zowine and the Employee Defendants.  *See*, *e.g.*, *id.*, ¶ 82 ("Zowine's acts of intimidation, harassing, and disparaging of [Plaintiff] came in two varieties, verbal (both oral and written) and physical, and were implemented both directly by Zowine and indirectly through Zowine's subordinates"); ¶ 89 ("Zowine encouraged his camp . . . to be uncooperative, obstructive, demeaning, and intimidating to [Plaintiff]"); ¶¶ 95-96 ("Zowine escalated his campaign against [Plaintiff]" by physically assaulting Plaintiff); ¶ 109 ("Zowine expanded the universe of his victims by sending false and offensive text messages to [Plaintiff's] wife"); ¶ 110 ("Zowine ratcheted up his efforts to defame and discredit [Plaintiff]").

The complaint also makes clear that these actions were not undertaken on behalf of Zoel and its subordinates.  To the contrary, the complaint alleges that they were taken without corporate authority and for the personal benefit of Zowine.  For example, the complaint alleges that Plaintiff, not Zowine, was the chairman, president, and a 50% shareholder of Zoel and chairman and president of each of Zoel's subsidiaries, including HHL, at all times materials to his claim.  ¶ 13.  The complaint alleges that Plaintiff, "[i]n his capacity as Zoel's president and chairman, . . . caused Zoel to place Zowine on paid administrative leave" as a result of his abusive actions.  ¶ 101.  Later, "[e]xercising what he understood to be his authority and fiduciary duties to Zoel and its subsidiaries, [Plaintiff] caused Zoel to terminate Zowine's employment at the Companies."  ¶ 112.  Still later, "acting in his capacity as Zoel's chairman and president," Plaintiff met with the AHCCCS Inspector General to report on his fraud investigation.  ¶ 161.  The

1    complaint thus alleges that Plaintiff, not Zowine, was acting for Zoel, including in

2    terminating Zowine's employment.

3         The complaint specifically alleges that Zowine and the Employee Defendants

4    acted without authority: "Zowine took control of Zoel for his own personal interest and

5    without authorization from [Plaintiff] or the Board of Directors[.]"  ¶ 116; *see also* ¶ 132

6    ("To obtain such authority it would have been necessary for Zoel's board of directors to

7    have granted it.  Zoel's board of directors had never granted Zowine or the [Employee

8    Defendants] such authority."); ¶ 140 (Zowine and the Employee Defendants acted

9    "without authorization or in excess of their authority").  The complaint also alleges that

10   Zowine's actions with respect to Zoel constituted trespass on Zoel's premises (¶¶ 122,

11   126, 139) and theft of Zoel's property (¶¶ 127, 132).  It alleges repeatedly that Zowine

12   took control of Zoel solely "for his own personal benefit" (¶¶ 116, 118, 129, 136) and

13   prevented Zoel and its subsidiaries from performing their essential functions (¶ 135).

14        Taken as true, as they must be at this motion-to-dismiss stage, these allegations

15   plainly assert that Zowine and the Employee Defendants engaged in the alleged

16   retaliatory conduct without the authority of Zoel and its subsidiaries.  Indeed, the actions

17   were taken to the detriment of Zoel, preventing it from performing its essential functions

18   and serving only the personal interest of Zowine.  As a result, the actions were not those

19   of Zoel and cannot form the basis for employer retaliation as required by § 3730(h).

20        The complaint does contain conclusory allegations that Zowine and the Employee

21   Defendants acted on behalf of Zoel and HHL.  These include bare allegations that the

22   retaliation is "attributed herein to Zowine, Zoel, [and] HHL," ¶¶ 293-96, but such legal

23   conclusions are not entitled to the assumption of truth even when couched as factual

24   allegations, *Iqbal*, 556 U.S. at 680.  The complaint also alleges that the retaliatory

25   conduct of Zowine and the Employee Defendants "was done on behalf of Zoel and HHL"

26   because both corporate entities would have benefited financially from concealment of the

27   alleged fraud.  Doc. 54, ¶¶ 297-98.  But Plaintiff cites no authority for the novel

28   proposition that a corporate employee's wrongful conduct, taken without authorization by

1  the corporation, becomes an act of the corporation because it may confer some ill-gotten
2  gains on the corporation.  To the contrary, it generally is accepted that wrongful actions
3  taken by corporate officers or employees without authorization make them liable to the
4  corporation.  *See F.D.I.C. v. Jackson*, 133 F.3d 694, 699 n.4 (9th Cir. 1998).

5        In summary, the FCA retaliation claim against Zoel and HHL must be dismissed
6  because the complaint does not allege that either entity engaged in retaliation against
7  Plaintiff.  The complaint instead alleges that Zowine and the Employee Defendants, who
8  were not Plaintiff's employers, engaged in the wrongful actions.  This does not state a
9  claim under § 3730(h).

10        **B.**     **Computer Fraud and Abuse Act.**

11        Defendants assert that Plaintiff's CFAA claim must be dismissed because Plaintiff
12  has failed adequately to allege that Defendants accessed any protected computer without
13  authorization or that Plaintiff suffered any cognizable loss for such access, and because
14  Plaintiff's claim is barred by the statute of limitations.  Doc. 61 at 12-16.  Each of
15  Plaintiff's CFAA claims requires that Plaintiff plead facts demonstrating that Defendants
16  accessed Zoel's computers "without authorization" or in a manner that exceeds the
17  authorization that was granted.  *LVRC Holdings v. Brekka*, 581 F.3d 1127, 1132 (9th Cir.
18  2009).

19        Defendants first argue that Plaintiffs have failed to allege that Zowine's access of
20  the Zoel computers was unauthorized.  This simply is not correct.  The complaint alleges
21  repeatedly that Zowine lacked authority to access the computers.  Doc. 54, ¶¶ 132, 140-
22  42.  Defendants quibble with these allegations, arguing that they are wrong for various
23  reasons, but the allegations are clear and must be taken as true for purposes of this
24  motion.  Defendants' factual disagreements with the allegations should be raised under
25  Rule 56, not Rule 12(b)(6).

26        Defendants also take issue with Plaintiff's allegation that Zowine lacked authority
27  to access the computers because he had been fired by Plaintiff.  Defendants argue that the
28  state court ruled that Plaintiff lacked authority to terminate Zowine, but, conspicuously,

1   Defendants do not argue that Plaintiff is barred by collateral estoppel or res judicata from

2   alleging that he properly fired Zowine.  The Court presumes this is because the state court

3   made its ruling in denying a motion for a preliminary injunction, which does not require

4   final adjudication of an issue but only a determination of whether the moving party is

5   likely to succeed on the merits.  *Powell-Cerkoney v. TCR-Montana Ranch Joint Venture,*

6   *II*, 860 P.2d 1328, 1333 (Ariz. Ct. App. 1993).

7          Defendants argue that the *Rooker-Feldman* doctrine precludes Plaintiff's claim

8   because it is based on upending the state court's ruling.  Doc. 61 at 15.  Defendants argue

9   that Plaintiff's allegations in this case constitute a de facto appeal of the state court's

10   ruling that the termination of Zowine was invalid.  *See Noel v. Hall*, 341 F.3d 1148, 1155

11   (9th Cir. 2003).  The Court does not agree.  As Defendants themselves note, Plaintiff has

12   appealed the state court's denial of the preliminary injunction to the Arizona Court of

13   Appeals.  Plaintiff does not ask this Court to review or set aside that denial.  If Plaintiff is

14   not precluded by collateral estoppel or res judicata from making new claims in this Court

15   that involve an allegation that Zowine was terminated, the Court cannot conclude that

16   doing so somehow violates the Rooker-Feldman doctrine, which is designed to avoid

17   undue interference by federal courts in state court proceedings.  *Skinner v. Switzer*, 131 S.

18   Ct. 1289, 1297 (2011) ("If a federal plaintiff present[s][an] independent claim, it is not an

19   impediment to the exercise of federal jurisdiction that the same or a related question was

20   earlier aired between the parties in state court") (internal quotation marks omitted); *Lance*

21   *v. Dennis*, 546 U.S. 459, 466 (2006) ("The [Rooker-Feldman] doctrine applies only in

22   'limited circumstances' . . . where a party in effect seeks to take an appeal of an

23   unfavorable state-court decision to a lower federal court") (citations omitted).  The Court

24   sees no risk of such interference here.[1]

25          Defendants argue that Plaintiff has not properly alleged that he was personally

26

27          [1] Defendants argue for the first time in their reply brief that Plaintiff is judicially estopped from denying the state court's ruling in this Court.  Doc. 76 at 9.  The Court will
28   not consider arguments raised for the first time in a reply brief.  *Bach v. Forever Living Prods. U.S., Inc.*, 473 F. Supp. 2d 1110, 1122 n.6 (W.D. Wash. 2007) (citing *Lentini v. Cal. Ctr. For the Arts*, 370 F.3d 837 n.6 (9th Cir. 2004)).

injured in excess of $5,000 by the unauthorized computer access as required by the CFAA.  Doc. 61 at 15.  Under the CFAA, loss is "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense." 18 U.S.C. § 1030(e)(11).

Plaintiff alleges that the personal losses he suffered were fees paid to The Intelligence Group in the amount of $165,934.66.  Doc. 54, ¶ 151.  Fees paid to an expert for investigating and remedying computer damage may be a cognizable "loss."  *See*, *e.g.*, *Dudick, ex rel. Susquehanna Precision, Inc. v. Vaccarro*, No. 06-2175, 2007 WL 1847435, at *5 (W.D. Pa. June 25, 2007).  A fair inference from Plaintiff's allegations is that he imaged the computers, among other reasons, to permit a continuation of Zoel's business, which would remedy the loss of the information.  Doc. 54, ¶¶ 134-35.

Lastly, Defendants assert that Plaintiff's CFAA claims are time-barred.  Doc. 61 at 16.  Under the CFAA, an action must commence "within 2 years of the date of the act complained of or the date of the discovery of the damage."   18 U.S.C. § 1030(g).  The CFAA defines damage as "any impairment to the integrity or availability of data, a program, a system, or information."  18 U.S.C. § 1030(e)(8).  A "'complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim.'"  *Hernandez v. City of El Monte*, 138 F.3d 393, 402 (9th Cir. 1998) (quoting *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 (9th Cir. 1995).

Plaintiff states in his complaint that Zoel's servers were stolen on February 2, 2011, that Plaintiff discovered the theft that day, and that Zoel was unable to continue its business without the computers.  Doc. 54, ¶ 133-35.  Plaintiff thus clearly states that he knew of the alleged CFAA violation on February 2, 2011.  Plaintiff also alleges, however, that the CFAA violation continued after that date as Defendants continued to access the computers without authorization.  Doc. 54, ¶¶ 307, 313, 325.  He alleges that the unauthorized access continued for ten months (¶ 313) and to this day" (¶ 325).  Thus,

1   even though CFAA claims based on the initial seizure of the computers may be time-
2   barred, the Court cannot conclude that all such claims are untimely.

3         Defendants argue that access was authorized after the parties entered into a
4   stipulation in state court, and cite portions of the state court record.  As with arguments
5   addressed above, this argument should be raised under Rule 56, not Rule 12(b)(6).

6         The Court will not dismiss the CFAA claims on the grounds identified by
7   Defendants.

8         **C.    Securities Fraud.**

9         Plaintiff's continued efforts to shoe-horn his alleged wrongs into a securities fraud
10  claim remain unsuccessful.  Plaintiff himself petitioned the state court for a dissolution of
11  Zoel on March 31, 2011.  Doc. 54, ¶ 164.  This petition set in motion a series of events
12  that ultimately resulted in Zowine being permitted to purchase Plaintiff's stock in Zoel.
13  173.  The price for Plaintiff's shares was set by the state court after a five-day valuation
14  trial.  ¶¶ 198-204.  Plaintiff is unhappy with the state court's valuation, alleging that it
15  was tainted by Zowine's fraudulent conduct.  *Id.*  In effect, Plaintiff asks this Court to
16  hold that Zowine defrauded the state court into adopting an unreasonably low valuation
17  of his stock.  ¶¶ 414-27.  Plaintiff's securities fraud claim must be dismissed for two
18  reasons.

19        First, this Court has already determined that a campaign to get Plaintiff to seek
20  dissolution of the corporation and part with his stock at whatever fair market value the
21  state court established is not conduct that gives rise to securities fraud liability.  Doc. 49
22  at 11.  Plaintiff himself sought the dissolution of Zoel, which, under Arizona law, led to
23  Zowine's right to purchase Plaintiff's stock.  Plaintiff's filing of the dissolution petition
24  constituted a commitment to sell his shares at a price to be determined by the state court.
25  Zowine's actions did not cause Plaintiff to be duped into accepting an unfairly low price
26  for his stock – the price was set by the state court.  *See*, *e.g.*, *Radiation Dynamics, Inc. v.*
27  *Goldmuntz*, 464 F.2d 876, 891 (2d Cir. 1972) ("[I]f a party is already bound to purchase
28  or sell securities, later misrepresentations or omissions do not constitute fraud in

connection therewith."); *Pitt. Coke & Chem. Co. v. Bollo*, 421 F. Supp. 908, 923 (E.D.N.Y. 1976) ("For purposes of a Rule 10b-5 claim, events occurring after the commitment to purchase stock has been made are irrelevant."); *see also Raschio v. Sinclair*, 486 F.2d 1029, 1030 (9th Cir. 1973) (affirming summary judgment against plaintiff where plaintiff purchased stock at issue two months before issuance of prospectus that allegedly contained misrepresentations); *Wischmeyer v. Wischmeyer*, No. 05-CV-6134T, 2006 WL 2433414, at *5 (W.D.N.Y. Aug. 21, 2006) (alleged misrepresentations affecting stock price made after plaintiff petitioned to dissolve company and defendant exercised right to purchase plaintiff's shares in lieu of dissolution could not support claim for securities fraud because events occurring after commitment to purchase are irrelevant).

Second, Plaintiff's securities fraud claim constitutes a clear attack on the stock valuation by the state court.  Plaintiff has the full right to appeal that valuation through the Arizona appellate system.  Intervention by this Court in the valuation trial or valuation determination would violate the Rooker-Feldman doctrine.

"Rooker–Feldman is a powerful doctrine that prevents federal courts from second-guessing state court decisions by barring the lower federal courts from hearing de facto appeals from state-court judgments." *Bianchi v. Rylaarsdam*, 334 F.3d 895, 898 (9th Cir. 2003); *see Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *D.C. Ct. App. v. Feldman*, 460 U.S. 462 (1983).  "Essentially, the doctrine bars 'state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced' from asking district courts to review and reject those judgments." *Henrichs v. Valley View Dev.*, 474 F.3d 609, 613 (9th Cir. 2007) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).  Even though Plaintiff's securities fraud claim is asserted under a statute that was not at issue in the state-court action, it is barred by Rooker–Feldman because his alleged injury resulted from the state court decision itself, and the requested relief would require this Court to review that decision. *Henrichs*, 474 F.3d at 614 (holding that Rooker–Feldman barred the plaintiff's claims for

declaratory and injunctive relief); *see Bianchi*, 334 F.3d at 898-99 (holding that Rooker–Feldman barred the plaintiff's due process claim); *Mothershed v. Justices of the Supreme Ct.*, 410 F.3d 602, 606-07 (9th Cir. 2005) (holding that Rooker-Feldman barred the plaintiff's challenge to state disciplinary proceedings).

## D.    Obstruction of Justice.

Plaintiff's obstruction of justice claim is as poor a fit as his securities fraud claim. The claim is brought under 42 U.S.C. § 1985(2), which makes it unlawful for "two or more persons in any State . . . [to] conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified."  To prevail on this claim, "a claimant must show that the conspiracy hampered the claimant's ability to present an effective case in federal court."  *Rutledge v. Ariz. Bd. of Regents*, 859 F.2d 732, 735 (9th Cir. 1988).

The complaint alleges that certain Employee Defendants conspired to obstruct justice by (1) delivering to Plaintiff at his new employer, Team Select, a "singing telegram" (Doc. 54, ¶ 456); (2) intruding into a Team Select meeting at a hotel and "demanding access to [Plaintiff]" (¶ 457); (3) "crashing" a Team Select party at a local hotel and thereafter "physically and verbally intimidat[ing] [Plaintiff], shouting obscenities, threats, and anti-Semitic remarks" (¶ 460); and (4) making comments to Plaintiff about his "activism" while Plaintiff was having a meeting with his lawyer at a restaurant (¶ 463).  Plaintiff also alleges that an unspecified Arizona attorney, holding himself out as counsel for Zowine, sent Plaintiff's father-in-law a letter and draft complaint without alleging the subject matter or causes of action enumerated in the draft complaint.  ¶ 464.

The complaint's allegations do not show, however, how Defendants' alleged acts of intimidation affected his ability to prosecute this case.  Plaintiff alleges only that the alleged intimidation has been undertaken "in an effort to deter [Plaintiff] from attending

to this pending federal court matter[.]"  Doc. 54, ¶¶ 237, 466-67.  But even if Plaintiff was intimidated, he must show how such intimidation had an effect on his ability to present his case in federal court.  *See Rutledge*, 859 F.2d at 735.  He has provided no such allegations, offering instead only a bare recital of the elements necessary for a § 1985(2).

      **IT IS ORDERED** that Defendants' motion to dismiss (Doc. 61) is **granted in part**.  Plaintiff's FCA, securities fraud, and obstruction of justice claims are dismissed.

      Dated this 4th day of November, 2014.

David G. Campbell
United States District Judge