1    **WO**

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                        **FOR THE DISTRICT OF ARIZONA**

8

9    Marc A. Wichansky,                          No. CV-13-01208-PHX-DGC

10                       Plaintiff,              **ORDER**

11   v.

12   David T. Zowine, et al.,

13                       Defendants.

14

15          The parties have filed cross-motions for summary judgment.  Docs. 273, 275.  The

16   motions have been fully briefed (Docs. 284, 303, 291, 307), and the parties have

17   produced a voluminous factual record (Docs. 274, 276, 285, 286, 301).  The Court held

18   oral argument on December 3, 2015.  For the reasons that follow, Plaintiff's motion will

19   be denied and Defendants' motion will be granted in part and denied in part.

20   **I.      Background.**[1]

21          In 2006, Marc Wichansky and David Zowine began business together, founding

22   Zoel Holding Co., Inc. ("Zoel"), an Arizona corporation specializing in employee

23   placement services, and MGA Home Healthcare, LLC ("MGA"), a wholly-owned

24   subsidiary of Zoel specializing in health care services.  Doc. 286, ¶ 1, Doc. 285, ¶ 3.[2]

25   _____

26          [1] For additional background, see *Wichansky v. Zoel Holding Co. Inc.*, 2014 WL
     6633513, at *1 (D. Ariz. Nov. 24, 2014), *Wichansky v. Zowine*, 2014 WL 289924, at *2
27   (D. Ariz. Jan. 24, 2014), and *Wichansky v. Zowine*, 2015 WL 3714088, at *1 (D. Ariz.
     June 15, 2015).

28          [2] Citation to a paragraph in one of the parties' statement of facts refers to both the
     paragraph and any response included immediately thereunder.  Citation to a page number

1   Wichansky was President of Zoel, Zowine was Vice President, and both men owned a

2   50% share in the company.  Doc. 286, ¶ 3.  The parties dispute the allocation of authority

3   within MGA.  *See* Doc. 285, ¶ 7.

4       The personal relationship between Wichansky and Zowine began to deteriorate

5   around December 2010.  After a particularly contentious conversation, Zowine told

6   Wichansky that the two "would never be friends again."  Doc. 286, ¶¶ 10-11.  On

7   January 19, 2011, the two men were involved in a physical altercation.  Wichansky

8   contends that Zowine assaulted him.  *Id.*, ¶ 14.

9       This personal dispute spilled over into their business relationship.  On January 26,

10  2011, Wichansky purported to terminate Zowine.  *Id.*, ¶ 24.  Around this time, Zowine,

11  who was no longer welcome at the main office on 44th Street in Phoenix, established a

12  new office for the business on 24th Street.  Doc. 285, ¶ 38.  On January 31, 2011, several

13  employees affiliated with Zowine (named as Defendants in this action) moved Zoel

14  computers from the 44th Street office to the 24th street office.  *Id.*, ¶ 41.  On February 2,

15  after an unsuccessful attempt to image Zoel's servers, the same employees moved the

16  servers from the 44th Street office to the 24th Street office.  *Id.*, ¶¶ 42-44.

17      On February 4, 2011, Wichansky filed a complaint in Maricopa County Superior

18  Court seeking an order confirming the validity of Zowine's termination and requiring

19  Zowine to return all Zoel property to the 44th Street location.  Doc. 286, ¶ 31.  The

20  parties ultimately entered into a stipulation which provided that they each would have

21  access to the computers and servers to continue the operation of their business.  *Id.*, ¶ 32.

22  This arrangement apparently worked for a period of time, but on March 31, 2011,

23  Wichansky sought judicial dissolution of Zoel and appointment of a receiver to manage

24  the company's assets.  *Id.*, ¶ 48.  On April 12, 2011, the Superior Court appointed Ted

25  Burr as a receiver and management consultant.  *Id.*, ¶ 62.  Burr will be referred to in this

26  order as "the receiver."

27

28

refers to the page number attached at the top of the page by the Court's CMECF system, not the page numbers of the original document.

On June 10, 2011, Zowine filed an election to purchase Wichansky's shares in Zoel in lieu of dissolution of the company. *Id.*, ¶ 69. On August 4, 2011, Wichansky moved to withdraw his dissolution petition, asserting that his prior counsel had failed to advise him of the consequences of filing the petition and that he had discovered evidence that Zowine was involved or acquiesced in medical billing fraud at the company. *Id.*, ¶ 70. The Court denied Wichansky's motion to withdraw. *Id.*, ¶ 73.

In March 2012, the Superior Court held a five-day valuation hearing to establish the terms of Zowine's purchase of Wichansky's interest in Zoel. *Id.*, ¶ 78. On March 6, 2012, the Court issued a ruling which found that Wichansky's interest was worth $5,000,000 less various deductions, resulting in a net valuation of $4,058,000 as of March 31, 2011, the date Wichansky moved for dissolution. *Id.*, ¶ 80. In arriving at this determination, the Court assigned half of the receiver's expenses to Wichansky and half to Zowine. *Id.* Shortly thereafter, Zowine made the initial payment and the Superior Court granted him full control of Zoel's property and assets. *Id.*, ¶ 85.

During the course of these events, efforts were made to investigate billing improprieties at MGA. In 2010, Zoel's Vice President of Finance, Richard Eden, discovered a pattern of irregular and improper billing practices at MGA. Doc. 285, ¶ 14. Eden communicated this finding to Wichansky, who alerted Zowine. *Id.*, ¶ 16. At Wichansky's direction, Eden began to investigate the discrepancies. *Id.*, ¶ 18. On March 21, 2011, Wichansky reported these improprieties to the Arizona Health Care Cost Containment System ("AHCCCS"), but did not label them as fraud. Doc. 301, ¶¶ MM-NN. In March 2013, MGA and AHCCCS entered into a settlement agreement to refund $1,250,000 to AHCCCS for overpayments received between January 1, 2006 and December 31, 2011. Doc. 286, ¶ 95. The agreement stated that "AHCCCS found no evidence that Provider committed fraud, acted with intent to defraud AHCCCS or AHCCCS Contractors, or engaged in criminal wrongdoing." Doc. 276, Ex. 72, ¶ IV.

On June 14, 2013, Wichansky filed this suit against Zoel, MGA, Zowine, and several individuals affiliated with Zowine. This is one of several pending lawsuits

1  between the parties.  The Court has issued several rulings in this case, and has disposed

2  of several of Wichansky's claims, including claims for securities fraud, obstruction of

3  justice, and violation of the False Claims Act, and some claims under the Computer

4  Fraud and Abuse Act ("CFAA").  *See* Docs. 49, 82, 149. The Court considers the

5  remaining claims today.

6  **II.    Legal Standard.**

7          A party seeking summary judgment "bears the initial responsibility of informing

8  the district court of the basis for its motion, and identifying those portions of [the record]

9  which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*

10  *Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Summary judgment is appropriate if the

11  evidence, viewed in the light most favorable to the nonmoving party, shows "that there is

12  no genuine dispute as to any material fact and the movant is entitled to judgment as a

13  matter of law."  Fed. R. Civ. P. 56(a).  Summary judgment is also appropriate against a

14  party who "fails to make a showing sufficient to establish the existence of an element

15  essential to that party's case, and on which that party will bear the burden of proof at

16  trial."  *Celotex*, 477 U.S. at 322.  Only disputes over facts that might affect the outcome

17  of the suit will preclude the entry of summary judgment, and the disputed evidence must

18  be "such that a reasonable jury could return a verdict for the nonmoving party."

19  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

20  **III.   Analysis.**

21          Wichansky moves for summary judgment on his claims for breach of fiduciary

22  duty, violation of the CFAA, conspiracy to violate the CFAA, and constructive fraud.

23  Doc. 273.   Defendants move for summary judgment on all of Wichansky's claims.

24  Doc. 275.  Wichansky has failed to defend his claims for unjust enrichment, intrusion

25  upon seclusion, and prima facie tort, and the Court will grant summary judgment on these

26  claims without further discussion. *See Estate of Shapiro v. United States*, 634 F.3d 1055,

27  1060 (9th Cir. 2011).  The Court will address Wichansky's remaining claims.

28  / / /

**A.**     **Breach of Fiduciary Duty.**

Count Nine of Wichansky's second amended complaint asserts a claim for breach of fiduciary duty.  Doc. 160, ¶¶ 469-473.  Wichansky argues that he is entitled to summary judgment on this claim because any reasonable jury would find that Zowine breached his fiduciary duties by contributing to or failing to prevent a pattern of overbilling at MGA, by interfering with investigations into the billing problems by Wichansky and the receiver, and by antagonizing Wichansky in an attempt to force him out of the company.  Doc. 273 at 5-8, Doc. 274, ¶¶ 68-71, Doc. 291 at 11-17.  Defendants contend that they are entitled to summary judgment because any reasonable jury would find Wichansky's claims time-barred, and because Wichansky cannot establish damages, an essential element of his claim.  Doc. 275 at 7-8.

**1.**     **Defendants' Motion.**

**a.**     **Statute of Limitations.**

In Arizona, a claim for breach of fiduciary duty is subject to a two-year statute of limitations.  *See Mohave Elec. Co-op., Inc. v. Byers*, 942 P.2d 451, 469 (Ariz. Ct. App. 1997) (citing A.R.S. § 12-542(3)).  The limitations period begins to run when the plaintiff discovers the cause of action – that is, when the plaintiff knows, or reasonably should know, that he has been harmed, that the harm was caused by the defendant, and that the act or omission which caused the harm was wrongful.  *See Walk v. Ring*, 44 P.3d 990, 996 (Ariz. 2002) (discovery occurs when plaintiff possesses "a minimum requisite of knowledge sufficient to identify that a wrong occurred and caused injury"); *Doe v. Roe*, 955 P.2d 951, 961 (Ariz. 1998) ("cause of action accrues when plaintiff discovers injury is attributable to particular person's conduct; plaintiff must know both the what and who elements") (citation omitted).  The date when a cause of action was discovered is a question of fact that, if subject to genuine dispute, must be decided at trial.  *Walk*, 44 P.3d at 996.

Defendants argue that Wichansky's fiduciary duty claim based on billing fraud is time-barred because Wichansky was aware of the alleged billing fraud before June 14,

2011, the earliest date within the statute of limitations.  Doc. 275 at 7.  Wichansky acknowledges that he was aware of "a pattern of irregular and improper billing practices" in 2010 (Doc. 292, ¶¶ 6, 11), and that he voluntarily disclosed these improprieties to AHCCCS on March 21, 2011 (*id.*, ¶ 56).  He argues, however, that he did not discover that Zowine was responsible for the overbilling until August 2011, when Ron Wise, a forensic auditor hired by Wichansky, completed a preliminary review of the company's records.  Doc. 291 at 13-14 (citing Doc. 289, Ex. BB, ¶¶ 14-19).

The most relevant Arizona case is *Walk v. Ring*, in which the Arizona Supreme Court addressed when a cause of action accrues for negligence or other wrongdoing in a fiduciary relationship.  Describing earlier Arizona cases, *Walk* stated that "it is not enough" for the plaintiff to comprehend that something has gone wrong – referred to in *Walk* as the "what" of the plaintiff's potential claim.  44 P.3d at 996.  Rather, "there must also be reason to connect the 'what' to a particular 'who' in such a way that a reasonable person would be on notice to investigate whether the injury might result from fault."  *Id.*

*Walk* further provides that, in determining whether the plaintiff was on notice to investigate, the question is whether plaintiff's "failure to go forward and investigate [his possible cause of action] is not reasonably justified."  *Id.*  For example, a plaintiff would be reasonably justified in declining to investigate a claim against a possible defendant if the plaintiff "subjectively believed" that the defendant had done nothing wrong.  *Id.* (citation omitted).  The question is whether a reasonable person in the plaintiff's position would investigate the claim.  *Id.*

Under this Arizona law, even if Wichansky knew, prior to the limitations period, that billing irregularities were occurring at MGA and that Zowine was in control of MGA, the claim for breach of fiduciary duty would not accrue until Wichansky knew or had reason to know that Zowine was involved or knowingly acquiesced in the irregularities.  Defendants have not established beyond genuine dispute that Wichansky knew or should have known this before June 14, 2011.  Wichansky notes that he and Zowine had been friends and business partners for many years, and that Zowine had been

the best man at his wedding.  Wichansky argues that he never suspected Zowine would be involved in fraudulent operation of the business they jointly owned.  Whether this is true in light of all the facts – including the serious falling-out that occurred between Wichansky and Zowine in late 2010 and Wichansky's report to AHCCCS in March 2011 – can be debated, but it is a factual determination that must be made by the jury, not the Court.  *Id.* ("This is the very sort of factual determination that must be left to the jury.").

Defendants contend that Wichansky discovered his claim in July 2010 when Richard Eden completed a report on the pattern of overbilling at MGA.  Doc. 307 at 5 (citing Doc. 285, Ex. 3).  But nothing in the Eden report suggested that Zowine was responsible for these improprieties.  Indeed, it appears that Wichansky contacted Zowine after receiving the report "to let him know about the problem."  Doc. 285, Ex. 3, ¶ 20.  A reasonable jury could infer from this fact that Wichansky had not yet discovered that Zowine was involved in the overbilling.[3]

*Walk* also notes that the accrual of a claim must take into account any fiduciary duty that existed between the plaintiff and the defendant.  Defendants do not argue that Zowine had no fiduciary duties to Wichansky.[4]  *Walk* states that "'if the fiduciary nature of the relationship charges the fiduciary with a duty to disclose his wrong to the plaintiff and he fails to disclose, the statute of limitations will be tolled.'"  44 P.3d at 1000 (quoting *Bourassa v. LaFortune*, 711 F. Supp. 43, 46 (D. Mass. 1989)).  Whether Zowine breached his fiduciary duty to Wichansky in this manner is for the jury to decide.[5]

---

[3] Defendants note that Ron Wise's August 2011 report similarly fails to pin responsibility on Zowine.  Doc. 307 at 5.  But whether this fact undermines the plausibility of Wichansky's account is a question for the trier of fact, not for the Court on a motion for summary judgment.

[4] Defendants asserted during oral argument that Zowine's fiduciary duties to Wichansky somehow ended when disputes arose between them, but this is not an argument made in Defendants' briefs and it is contrary to law.  *See, e.g.*, *Everest Inv'rs 8 v. McNeil Partners*, 8 Cal. Rptr. 3d 31, 40 (App. 2003) ("A partner's fiduciary duty extends to the dissolution and liquidation of partnership affairs, as well as to the sale by one partner to another of an interest in the partnership.").

[5] Defendants also argue that Wichansky can produce no evidence that Zowine was involved in billing fraud.  Doc. 307 at 9.  The Court disagrees.  Wichansky has presented evidence that several employees witnessed repeated instances of overt fraud within

Wichansky also argues that Zowine continued to breach his fiduciary duties after June 14, 2011, by interfering with investigations by Wichansky and the receiver into the billing improprieties at MGA.  Doc. 291 at 14, Doc. 292, ¶¶ 65-67.  Defendants do not explain how this claim could be time-barred.  The Court will deny Defendants' request for summary judgment on this claim.

Wichansky finally asserts that Zowine breached his fiduciary duties before Wichansky moved for dissolution – and therefore before the opening of the limitations period – by "creating an atmosphere of chaos and terror in order to harass, antagonize and intimidate Wichansky to cause him to abandon the company he built."  Doc. 291 at 15. To the extent that the gravamen of this claim is the immediate injury Wichansky suffered from the harassment – the physical injury from the alleged assault or the emotional injury from the alleged harassment – the claim is time-barred.  Wichansky clearly knew both the "what" and the "who" of such wrongs when they occurred.

To the extent that the gravamen of this claim is the injury Wichansky suffered in seeking dissolution of Zoel, however, the Court cannot conclude as a matter of undisputed fact that the claim is time-barred.  The principal of a company may be liable for breach of fiduciary duty where he wrongfully causes the dissolution of the company. *See Rhue v. Dawson*, 841 P.2d 215, 226 (Ariz. Ct. App. 1992) (a reasonable jury could find that the partner breached his fiduciary duty by executing a wrongful plan to oust his co-partner from the business).  Wichansky asserts that he did not know before June 14, 2011, that Zowine's campaign of harassment was directed toward this end.  He asserts that Zowine's plan only became apparent when Wichansky discovered Zowine's involvement in the billing fraud.  For reasons discussed above, the timeliness of this claim presents a factual issue that must be resolved at trial.

/ / /

---

MGA, that Zowine managed the employees who were engaged in the alleged fraud, that these employees worked directly with Zowine and under his direction, and that Zowine took repeated steps to thwart the investigation into the alleged fraud.  *See, e.g.*, Doc. 292-1, 67-74, 139-43.  This and other evidence presented by Wichansky is sufficient to create a question of fact on whether Zowine was involved in billing fraud.

In sum, the Court holds that Wichansky's breach of fiduciary duty claim for immediate injuries from Zowine's alleged campaign of "chaos and terror," such as physical or emotional injuries from the assaults or harassment, is time-barred as to Zowine's actions before June 24, 2011, but that Wichansky's claim for breach of fiduciary related to the forced dissolution of the company through a campaign of terror cannot be found time-barred on the basis of undisputed fact.[6] This breach claim, as well as the breach claims based on Zowine's alleged involvement in the fraud and interference with the fraud investigation, must be resolved at trial.

### b. Damages.

A claim for breach of fiduciary duty must establish that the plaintiff was damaged by the defendant's breach. *John E. Shaffer Enters. v. City of Yuma*, 904 P.2d 1252, 1256 (Ariz. Ct. App. 1995). A plaintiff may satisfy this element by establishing either compensatory or restitutionary damages. *AMERCO v. Shoen*, 907 P.2d 536, 540-42 (Ariz. Ct. App. 1995) (citing Am. Law Inst., Principles of Corporate Governance § 7.18 (1994)).[7] Nominal damages will not suffice. *Id.*

Defendants contend that they are entitled to summary judgment because Wichansky has not established any damages resulting from the alleged breaches. Doc. 275 at 6-9. Defendants later argue that Wichansky cannot recover the various categories of damages he and his experts have identified. *Id.* at 27-31. The Court will address both sections of Defendants' motion now.

---

[6] In effect, the Court concludes that the alleged campaign of terror could have given rise to two different types of fiduciary duty claims: one set of claims for individual instances of assault or harassment that produced immediate injuries and accrued immediately, and another for the overarching plan to drive Wichansky from the business, which would not have accrued until Wichansky discovered that the individual acts of harassment comprised a wrongful plan to oust him. The latter claim could be timely even if challenges to many of the individual instances of harassment would be time-barred. *Cf. Doe v. Roe*, 955 P.2d 951, 963 (Ariz. 1998) (declining to adopt bright-line rule about how to apply statute of limitations where "repeated tortious acts inflicted over a period of years have caused a universe of damage that cannot be allocated to any particular act.").

[7] *Shoen* indicates that courts applying Arizona law should follow the Principles of Corporate Governance "in the absence of controlling Arizona authority." 907 P.2d at 540-42 (citations omitted). The Court's analysis has therefore been informed by the Principles.

- 9 -

Defendants argue that attorneys' fees paid by Wichansky cannot be recovered as damages in this action.   Wichansky's damages expert lists more than $3,400,000 in attorneys' fees billed by Wichansky's current and former counsel.  Doc. 292-1 at 128.  In Arizona, however, the law "has long been that attorney's fees are not recoverable either in the same or a subsequent action unless provided for by statute or by agreement of the parties."  *State v. Williams*, 472 P.2d 109, 111 (Ariz. Ct. App. 1970); *see also Coggins v. Wright*, 526 P.2d 741, 743 (Ariz. Ct. App. 1974).

Wichansky does not cite a contractual provision entitling him to recover the attorneys' fees, but he does cite a number of Arizona cases that have awarded fees under A.R.S. § 12-341.01.   *See* Doc. 291 at 33-34.   That statute authorizes a court to award reasonable attorneys' fees to the prevailing party in an action arising out of contract; it does not authorize the award of such fees by a jury as consequential damages.  *See* A.R.S. § 12-341.01(A); *see also Ponderosa Plaza v. Siplast*, 888 P.2d 1315, 1319 (Ariz. Ct. App. 1993) ("Although we recognize that attorney's fees often arise from a breach of an agreement between parties, it is not the type of damage that normally is considered to be a consequential damage. . . .   Only [A.R.S. § 12–341.01] authorizes the award of attorney's fees in this case; the fees may not be awarded as an item of consequential damages.").   Because Wichansky cites no authority for the proposition that he can recover fees paid to his lawyers as consequential damages in this case,[8] the Court will grant summary judgment to Defendants on the attorneys' fees portion of Wichansky's damages claim.   Wichansky also argues that his attorneys' fees can be recovered as punitive damages, but he cites no case that supports this assertion.  Doc. 291 at 34.[9]

---

[8]  Wichansky cannot rely on the Arizona Court of Appeal's unpublished decision in *Silver Springs Oasis, LLC v. Lawyers Title of Ariz., Inc.*, 2014 WL 47342 (Jan. 7, 2014).  *See* A.R.S. Sup.Ct.Rules, Rule 111(c).  In any event, the case concerns an award of fees under § 12-341.01.

[9]  Arizona courts have recognized that attorneys' fees can be recovered as damages when they are incurred in litigation with a third person as a foreseeable result of the defendant's breach of contract.  These cases make clear, however, that such damages "can only be pursued where the plaintiff's expenses were incurred in litigation with someone other than the defendant."  *Spanier, Wichita v. Pima County*, 643 P.2d 21, 22 (Ariz. Ct. App. 1982); *see also Spanier v. U.S. Fid. & Guar. Co.*, 623 P.2d 19, 29 (Ariz.

Wichansky's damages expert includes fees paid to the receiver and various non-attorney experts in connection with the dissolution of Zoel and the parties' dispute. Defendants' cases concern attorneys' fees, not the fees of other experts. Docs. 275 at 28-29; 307 at 14-15. Defendants have provided no authority to show that fees paid to the receiver or various experts are unavailable as damages in this case. The Court will not enter summary judgment on fiduciary duty claims related to these fees.

Wichansky seeks to recover income he would have earned from Zoel had he continued to own an interest and act as an officer. Doc. 276-6 at 47. Defendants argue that Wichansky's future income was already included in the Superior Court's valuation of Zoel. Doc. 275 at 27-28. The Court is not persuaded. The evidence cited by Defendants shows that the experts in the state court used an income approach to valuing Zoel, but that approach appears to have focused on revenues and after-tax earnings of Zoel. Doc. 276-2 at 36-37. Wichansky seeks to recover income he personally would have earned from Zoel. Such income, if paid as wages, would be deducted before the after-tax earnings of the company are calculated and would not be included in a valuation based on such after-tax earnings.[10] As a result, Defendants have not shown that Wichansky's claim for lost income was already included in the state court's valuation of Zoel. The Court will not enter summary judgment on this claim.

Defendants argue that the Court should grant summary judgment on Wichansky's expert's doubling of Wichansky's lost income damages. Doc. 275 at 29. The expert bases his doubling of Wichansky's income damages on the False Claims Act, 31 U.S.C. § 37390(h)(2) (*see* Doc. 276-6 at 47), but the Court previously dismissed Wichansky's

---

Ct. App. 1980) (the dispute in which attorneys' fees are incurred must be "with a third party not with the defendant"). Wichansky seeks to recover fees incurred in litigation with Zowine and the other Defendants.

[10] *See Blackburn v. TKT & Associates, Inc.*, 693 S.E.2d 919, 921 (S.C. 2010) (explaining that income approach "is a method for ascertaining the present value of a corporation's expected future earnings. This figure is obtained by multiplying a recent year's financial performance or an average of recent years' performances by a capitalization ratio selected to reflect the corporation's future prospects.") (citing 14 Business Organizations with Tax Planning § 186.05(2) (Matthew Bender) (2010)).

1    claims under this statute (Doc. 82).  The Court accordingly will grant summary judgment

2    on Wichansky's claimed doubling of his lost wages damages.

3           Defendants argue in their summary judgment motion that Wichansky has

4    produced no evidence of damages based on his loss of equity in Zoel and its subsidiaries.

5    Doc. 275 at 27-28.  Wichansky does not address this argument in his response.  Doc. 291

6    at 32-35.  A review of Wichansky's expert report confirms Defendants' assertion.  The

7    damages expert, Dr. Chris Young, expressly states that he has not valued Wichansky's

8    equity interest in Zoel as part of his damages opinion.  *See* Doc. 276-6 at 39, 45, 48.  Dr.

9    Young's supplement, which may not be timely, confirms this fact.  Doc. 292-1 at 181.

10   Because Wichansky has presented no evidence of damages he suffered from a reduced

11   value of his equity in Zoel, the Court will grant summary judgment on these damages.

12   *Celotex*, 477 U.S. at 322.[11]

13          Zoel was required to pay $1,250,000 to settle AHCCCS's overbilling claims, and

14   Zowine offset one-half of this amount from the payments he owed Wichansky under the

15   state court judgment.  Defendants contend that Wichansky was not damaged by this

16   offset because he had no right to the funds in the first place.  Doc. 275 at 8.  Wichansky's

17   expert takes a different view, arguing that the offset resulted in Zowine not making

18   payments to Wichansky that were due under the state court judgment in 2013 and 2014,

19   that this lack of payment constituted a "default" under the state court judgment, and that

20   Zowine therefore must be required to pay all amounts due under the judgment with

21   interest and with future payments being accelerated to today.  Doc. 276-6 at 42.

22          The Court has great difficulty with Wichansky's suggestion that this Court should

23   enforce a default of the state court judgment.  Enforcement of that judgment is the state

24   court's business, not the province of this Court.  The Court will dismiss this damages

25   claim without prejudice for several reasons.

26   ──────────────

27          [11] The Court is not certain that it would be proper to address an alleged defect in

28   the state court's valuation of Zoel.  That issue would seem better suited to a motion to
     reopen the state proceeding.  In light of the Court's ruling above, however, the Court
     need not address this issue.

First, the Court lacks jurisdiction to enforce the Superior Court judgment.  *See Marbury Law Grp., PLLC v. Carl*, 729 F. Supp. 2d 78, 83 (D.D.C. 2010) ("this Court lacks jurisdiction to enforce state court judgments"); *Euro-Am. Coal Trading, Inc. v. James Taylor Mining, Inc.*, 431 F. Supp. 2d 705, 707 (E.D. Ky. 2006) ("the Court finds that it does not have subject matter jurisdiction to register and enforce a state court judgment under the applicable federal registration statute, 28 U.S.C. § 1963"); *Caruso v. Perlow*, 440 F. Supp. 2d 117, 119 (D. Conn. 2006) ("Congress' express provision for registration of the judgment of one federal court in another federal court in 28 U.S.C. § 1963 by implication excludes the registration of state-court judgments in federal court under § 1963."); *but see GE Betz, Inc. v. Zee Co.*, 718 F.3d 615, 625 (7th Cir. 2013) (concluding that 28 U.S.C. § 1963 permits federal courts to enforce state court judgments).

Second, to the extent the Court could exercise jurisdiction over this claim under 28 U.S.C. § 1367, the Court may – and does – decline to do so.  This order eliminates all claims over which the Court has original jurisdiction, enabling it to decline to exercise jurisdiction over state claims.  28 U.S.C. § 1367(c)(3).  The Court declines to exercise jurisdiction over this claim.

Third, the Court finds compelling reasons of comity to decline jurisdiction over this claim.  *See id.* § 1367(c)(4); *Juidice v. Vail*, 430 U.S. 327, 334-35 (1977) (recognizing that comity interests counsel against federal court interference with "the regular operation of [a state's] judicial system").  The state court that entered the judgment, not this Court, should make decisions regarding its default and enforcement.

Finally, Wichansky cannot recover damages in this case based on a default of the state court judgment because (a) he has not pled a claim for default or for enforcement of the judgment, and (b) such damages could not have resulted from a breach of fiduciary duty because the alleged default occurred after Wichansky's interest in Zoel had been terminated and Zowine's fiduciary duties to Wichansky had ended.  *See Everest Inv'rs 8*, 8 Cal. Rptr. 3d at 40.

1

2.      **Wichansky's Motion.**

2          In Arizona, corporate directors, officers, and controlling shareholders owe

3   fiduciary duties to the corporation and its shareholders.   *See Master Records, Inc. v.*

4   *Backman*, 652 P.2d 1017, 1020 (Ariz. 1982); *Pioneer Annuity Life Ins. Co. by Childers v.*

5   *Nat'l Equity Life Ins. Co.*, 765 P.2d 550, 555 (Ariz. Ct. App. 1988).   Corporate officers

6   are required to discharge their discretionary duties in good faith, "[w]ith the care an

7   ordinarily prudent person in a like position would exercise in similar circumstances," and

8   "[i]n a manner the officer reasonably believes to be in the best interests of the

9   corporation."   A.R.S. § 10-842(A).   *See also* A.R.S. § 10-830(A) (duties of directors).

10  Where a corporate fiduciary breaches any of these duties, the fiduciary is subject to

11  liability for any losses legally caused by the breach.   Am. Law Inst., Principles of

12  Corporate Governance § 7.18(a).[12]

13          Wichansky contends that Zowine owed fiduciary duties to Wichansky in his

14  capacity as director and vice president of Zoel, that Zowine breached these duties by

15  contributing to or failing to prevent a pattern of overbilling at MGA, and that this breach

16  caused damage to Wichansky.   Doc. 273 at 6-8.   Wichansky contends that he is entitled

17  to summary judgment because there is no genuine dispute of material fact as to any of

18  these elements.   *Id.* at 5.

19                  a.      **Fiduciary Duty.**

20          Wichansky contends that Zowine owed him a fiduciary duty because Zowine was

21  vice president, director, and a 50% shareholder of Zoel, and Wichansky was president

22

23          [12] In their reply in support of their motion for summary judgment, Defendants
24  argue for the first time that Wichansky is not entitled to bring a direct action against
    Zowine.   Doc. 307 at 7 (citing *Albers v. Edelson Tech. Partners L.P.*, 31 P.3d 821, 826
25  (Ariz. Ct. App. 2001)).   The Court is not required to consider arguments raised for the
    first time in a reply brief.   *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007).   In
26  addition, the argument lacks merit because the limitations discussed in *Albers* do not
    apply to the shareholders of small, closely-held corporations.   *See Johnson v. Gilbert*, 621
27  P.2d 916, 918 (Ariz. Ct. App. 1980) (where corporation was closely held by the plaintiffs
    and the defendants, who "operated more as partners than in strict compliance with the
28  corporate form," plaintiffs had standing to initiate direct action seeking individual
    recovery), *overruled on other grounds by Turley v. Ethington*, 146 P.3d 1282 (Ariz. Ct.
    App. 2006).   *See also* Am. Law Inst., Principles of Corporate Governance, § 7.01(d).

1  and a 50% shareholder of Zoel.  Doc. 303 at 4.  Defendants do not dispute these facts, but

2  counter that Wichansky "has not established that Zowine was an officer of [MGA] or

3  even that [Wichansky] had any interest in [MGA]."  Doc. 284 at 3.

4       Wichansky does not need to establish these things.  Whether or not Zowine was an

5  officer of MGA, it is undisputed that he was a director and vice president of Zoel.  *See*

6  Doc. 276, ¶ 3.  As such, Zowine owed a fiduciary duty to Zoel and its shareholders in all

7  matters affecting Zoel, including all matters related to Zoel's wholly-owned subsidiary,

8  MGA.  *See* Restatement (Third) of Agency § 8.01 (2006) ("An agent has a fiduciary duty

9  to act loyally for the principal's benefit *in all matters connected with the agency*

10  *relationship*.") (emphasis added).  The Court concludes that Zowine owed Wichansky

11  fiduciary duties in matters related to MGA.[13]

12                    **b.      Breach.**

13       Wichansky asserts that Zowine breached his fiduciary duties by contributing to or

14  failing to prevent a pattern of overbilling at MGA.  Specifically, Wichansky asserts that

15  Zowine failed to establish, implement, and maintain a comprehensive fraud and abuse

16  compliance program, failed to establish a pre- or post-billing review program, and failed

17  to establish written policies and procedures concerning proper billing.  Doc. 273 at 7.

18  Wichansky also asserts that Zowine breached his fiduciary duties by interfering with

19  investigations into the overbilling by Wichansky and the receiver.  *Id.* at 7-8.  Wichansky

20  contends that there is no genuine dispute as to whether Zowine is responsible for the

21  relevant acts and omissions, and that no reasonable jury could find that these acts and

---

23       [13] Although Zoel was organized as a corporation, both parties rely, in part, on the
24  common law of partnership in their briefs.  *See, e.g.*, Doc. 291 at 11 (citing *Everest Inv'rs
   8*, 8 Cal. Rptr. 3d at 31); Doc. 307 at 6 (citing 59 Am Jur. 2d P'ship § 281).  The Court
25  agrees that the common law of partnership should inform this case because Wichansky
   and Zowine effectively operated as partners during the course of their business
26  relationship.  *See Roche v. Golden Sky Lands, Inc.*, 487 P.2d 756, 758 (Ariz. 1971)
   ("fiduciary relationships recognized and enforceable in equity do not depend upon
27  nomenclature; nor are they necessarily the product of any particular legal relationship")
   (citation omitted).  The partnership relationship between Wichansky and Zowine
28  constitutes a separate basis for recognizing a fiduciary relationship between them.  *See
   Hurst v. Hurst*, 405 P.2d 913, 917 (Ariz. 1965) ("A partner stands in a fiduciary
   relationship to his co-partner.").

1    omissions were consistent with Zowine's duty to act in good faith, with due care, and in

2    the best interests of the corporation.

3           Defendants do not dispute that failure to establish the relevant programs and

4    policies would constitute a breach of fiduciary duty.[14] Defendants argue instead that

5    Zowine was not responsible for these failures.   Specifically, Defendants contest

6    Wichansky's assertion that Zowine solely managed MGA and its billing staff, contending

7    that Wichansky "had at least equal responsibility" over the company.  Doc. 284 at 4.

8           The Court finds a genuine dispute as to whether Zowine was responsible for

9    billing at MGA.  The evidence Wichansky cites to support his allegation that Zowine

10   "solely managed the operation of [MGA]" is either of disputed admissibility or

11   reasonably subject to conflicting inferences.  *See* Doc. 285, Responses to ¶¶ 7-9.

12   Wichansky has therefore failed to establish that he is entitled to summary judgment on

13   the claim that Zowine participated in billing fraud.

14          The Court further concludes that there is a genuine dispute as to whether Zowine

15   interfered with investigations into the billing issues by Wichansky or the management

16   consultant.  Defendants contend that Wichansky's evidence in support of this allegation

17   (Doc. 274, Ex. X, a filing by the receiver in Maricopa County Superior Court) is

18   inadmissible hearsay.  Doc. 285, Responses to ¶¶ 67-71.  Wichansky does not reply to

19   this evidentiary objection.  *See* Doc. 303.  "Given the overwhelming volume of

20   documents before the district court, once Defendants objected to the evidence Plaintiff[]

21   sought to be admitted, the onus was on Plaintiff[] to direct the district court's attention to

22   . . . evidentiary principles under which the evidence in question could be deemed

23   admissible by the district court."  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 385-86

24   (9th Cir. 2010).  Because Wichansky has not done so, he is not entitled to summary

25

---

26          [14] In their reply in support of their motion for summary judgment, Defendants
     argue for the first time that Wichansky must establish Zowine's "personal participation"
27   or "acquiescence by knowledge" in MGA's overbilling.  Doc. 307 at 2 (citing *Dawson v.
     Withycombe*, 163 P.3d 1034, 1051 (Ariz. Ct. App. 2007)).  As already noted, the Court
28   need not consider arguments raised for the first time in reply briefs.  *Zamani*, 491 F.3d at
     997.  In any event, the argument does not alter the Court's decision on this issue.

1    judgment on this claim on the basis of the receiver's report.[15]

2         **B.    CFAA.**

3         Counts Three and Five of Wichansky's second amended complaint assert claims

4    for violation of § 1030(a)(4) of the CFAA and conspiracy to violate this provision.

5    Doc. 160, ¶¶ 330-362, 392-413.  Wichansky contends that certain Defendants violated

6    the CFAA by "delet[ing] and alter[ing] information on the company's computers in

7    furtherance of the fraudulent billing scheme."  Doc. 291 at 27.  Defendants counter that

8    Wichansky has not established a viable claim because he has not demonstrated that he

9    suffered any "damage" or "loss" from the alleged violations during the limitations period.

10   Doc. 275 at 20-21.  The Court agrees.

11        For purposes of Count Three, Wichansky must show that Defendants

12   "(1) accessed a protected computer, (2) without authorization or exceeding such

13   authorization that was granted, (3) knowingly and with intent to defraud, and thereby (4)

14   furthered the intended fraud and obtained anything of value, causing (5) a loss to one or

15   more persons during any one-year period aggregating at least $5,000 in value."  *LVRC*

16   *Holdings LLC v. Brekka*, 581 F.3d 1127, 1132 (9th Cir. 2009) (internal formatting

17   omitted) (citing 18 U.S.C. § 1030(a)(4)).  For purposes of Count Five, Wichansky must

18   show that Defendants conspired or attempted to violate the CFAA.  18 U.S.C. § 1030(b).

19   Both claims must establish that Plaintiff suffered "damage" or "loss" as a result of

20   Defendants' CFAA violation.  *Id.* § 1030(g).  Damage is defined as "any impairment to

21   the integrity or availability of data, a program, a system, or information."  *Id.* §

22   1030(e)(8).  Loss is defined as "any reasonable cost to any victim, including the cost of

23   responding to an offense, conducting a damage assessment, and restoring the data,

24   program, system, or information to its condition prior to the offense, and any revenue

25   lost, cost incurred, or other consequential damages incurred because of interruption of

26   service."  *Id.* § 1030(e)(11).

27   _____

28        [15] This ruling precludes summary judgment for Wichansky on this issue, but it
     does not preclude Wichansky from arguing that the receiver's report is admissible at trial.

1

### 1.      Statute of Limitations.

The Court previous ruled on Wichansky's CFAA claims.  Doc. 149.  The Court found several aspects of the claims time-barred, but declined to enter summary judgment on CFAA claims based on medical billing fraud or unauthorized access that occurred after June 14, 2011.  *Id.*  Defendants' motion for summary judgment now asserts that Wichansky cannot produce evidence to support the remaining claims.  Doc. 275 at 17.

In response, Wichansky asserts that he has "established a timely and appropriate claim" for violations of the CFAA.  Doc. 291 at 23.  Wichansky then proceeds to provide seven pages of factual argument that contain no references to any dates.  *See id.* at 23-29.  These pages cite to numerous paragraphs in Wichansky's statement of facts, which likewise are virtually devoid of dates.  *See* Doc. 292, ¶¶ 33-42, 81-99.[16]  When asked about this at oral argument, Wichansky's counsel referred the Court to the statements of Amanda Chippendale, Jessica Soncrainte, and Trudee Percival.  The Court has reviewed these statements (Doc. 292-1 at 67-74, 139-143), and they too lack dates from which the Court can conclude that medical billing fraud occurred after June 14, 2011.  Because Wichansky has failed to provide evidence from which a reasonable jury could conclude that CFAA violations based on medical billing fraud are timely, the Court will enter summary judgment on these claims.  *Celotex*, 477 U.S. at 322.[17]

The same is true for Wichansky's claim that Defendants exceeded their authority by deleting or altering data within the limitations period.  Wichansky provides no evidence from which a reasonable jury could conclude that such CFAA violations occurred after June 14, 2011.  The Court will grant summary judgment on this CFAA claim as well.[18]

---

[16] These paragraphs contain a few references to events occurring after January of 2011, but the earliest date within the two-year limitations period is June 14, 2011.  These few references therefore do not establish the timeliness of the CFAA claims.

[17] The one timely instance of medical billing fraud that Wichansky identifies – the alleged overbilling of Colorado Medicaid – fails for lack of damage, as discussed below.

[18] These rulings apply to Wichansky's conspiracy claims under 18 U.S.C. § 1030(b), as Wichansky has provided no evidence showing that the conspiracy occurred

2.      **CFAA Damages.**

The Court concludes that Wichansky's CFAA claims also fail for lack of damages. Wichansky contends that Defendants' CFAA violations caused several types of losses: (1) unspecified fees incurred by the receiver and later assigned to Wichansky in the state court judgment; (2) payments of $165,944.00 to The Intelligence Group ("TIG") to image stolen devices; (3) legal fees paid to his current counsel and other lawyers to represent him in the various lawsuits with Zowine and others; and (4) overpayment by Colorado Medicaid of $6,987.  Doc. 291 at 26 (citing Doc. 292, ¶¶ 50-51, 100-101).

Wichansky identifies no evidence to show that the receiver's fees were incurred in response to medical billing fraud occurring after June 14, 2011, or the unauthorized deletion of data after that date.  He makes that assertion, repeatedly, but cites no evidence from which the Court or a trier of fact could conclude that the receiver incurred such fees. Although it is possible that some supporting evidence might be found somewhere in the hundreds of pages of exhibits, Wichansky provides no citation in his response to Defendant's CFAA arguments.[19]   The Court is not obligated to "scour the record in search of a genuine issue of triable fact."  *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (citation omitted).  If the nonmoving party's opposition fails to cite specifically to materials in the record, the Court is not required to search the entire record for evidence establishing a genuine issue of material fact.  *See Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1028-29 (9th Cir. 2001).  Rather, the Court relies on "the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Keenan*, 91 F.3d at 1279 (citation omitted).  "As the Seventh Circuit observed in its now familiar maxim, 'judges are not like pigs, hunting for truffles buried in briefs.'"  *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (quoting *United States*

---

within the limitations period.

[19] Wichansky asserts that he can recover "the management consultant fee, parts of which were accrued attempting to discover and repair the damage Johnson made." Doc. 291 at 26.  The paragraphs cited in support of this assertion (Doc. 291, ¶¶ 50-52, 100-101) provide no evidence regarding the receiver's fees or how they were incurred.

*v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)) (alteration omitted).

The same problem exists as to payments Wichansky made to TIG. Wichansky's CFAA argument asserts that he incurred fees of $165,944 to TIG (Doc. 291 at 28), but his citations to the record do not identify any specific portion of this sum that arose from any specific CFAA issues. One citation (Doc. 292, ¶ 100) is to Wichansky's expert report from Dr. Young (Doc. 292-1 at 128-129). Doc. 291 at 26, 28. It asserts that TIG "was retained to retrieve, back up, make available and secure the lost data as a result of Defendants' theft of the servers and computer work stations." Doc. 292-1 at 129. This appears to be a reference to Zowine's removal of the servers and computers from the 44th Street location to the 24th Street location, an event the Court has already found to be outside the CFAA's two-year limitations period. Doc. 149 at 4. Wichansky's other citation (Doc. 292, ¶¶ 50-51) is to his own deposition (Doc. 292-1 at 79-80). Doc. 291 at 26, 28. On the cited pages, Wichansky testifies that TIG was hired to image computers at his office (44th Street) and Zowine's office (24th Street), but he provides no breakdown of fees, no dates for the work, and no basis for asserting that imaging his own computers was somehow related to Defendants' CFAA violations. As with the receiver's fees, Wichansky has provided no evidence from which the Court or a jury could conclude that the TIG fees were incurred in response to medical billing fraud occurring after June 14, 2011, or the unauthorized deletion of data after that date. Again, it is not the Court's duty to search for such evidence in the voluminous documents provided by Wichansky.

Wichansky also claims that he can recover litigation expenses as part of his CFAA damages, but such expenses are not a cognizable loss under the CFAA. *See Brooks v. AM Resorts, LLC*, 954 F. Supp. 2d 331, 338 (E.D. Pa. 2013) ("fees paid to an expert to assist in litigation" do not constitute a "loss" under CFAA); *First Mortg. Corp. v. Baser*, 2008 WL 4534124, at *3 (N.D. Ill. Apr. 30, 2008) ("costs unrelated to the computer itself, such as litigation expenses or speculative future damages do not qualify.").

Finally, Wichansky claims $6,987 in damages from the unauthorized access of a computer portal owned by the State of Colorado. He asserts that Defendant Johnson and

others accessed this portal and engaged in conduct which caused Colorado to make an overpayment of $6,987.   Doc. 292-1 at 102.   Although Wichansky is correct that an individual other than the computer's owner may state a claim under the CFAA, *Theofel v. Farey-Jones*, 359 F.3d 1066, 1078 (9th Cir. 2004), a CFAA plaintiff must always establish that he is "a person who suffer[ed] damage or loss by reason of a violation" of the CFAA.   18 U.S.C. § 1030(g).   Wichansky fails to explain how Colorado's overpayment caused him injury.   He presents no evidence that he personally repaid this amount or suffered any other financial consequence from the overpayment.   *See* Doc. 291 at 24-25.

In sum, the Court finds that Wichansky has failed "to make a showing sufficient to establish the existence of an element essential to [his] case," *Celotex*, 477 U.S. at 322, namely, the existence of a loss of $5,000 or more attributable to Defendants' violation of the CFAA.   Defendants' motion will be granted and Wichansky's motion denied with respect to the CFAA claims.[20]

## C.     Constructive Fraud.

Count Ten of Wichansky's second amended complaint asserts a claim for constructive fraud.   Doc. 160, ¶¶ 474-479.   A person commits the tort of constructive fraud when, in breach of a fiduciary duty to another, he misrepresents or fails to disclose a material fact and the other justifiably relies upon the misrepresentation or omission to his detriment.   *See In re McDonnell's Estate*, 179 P.2d 238, 241 (Ariz. 1947) (constructive fraud is deception in breach of a fiduciary duty, and is actionable "irrespective of moral guilt"); *Dawson v. Withycombe*, 163 P.3d 1034, 1057 (Ariz. Ct. App. 2007) (constructive fraud "is a breach of a legal or equitable duty which, without regard to moral guilt or intent of the person charged, the law declares fraudulent because the breach tends to deceive others, violates public or private confidences, or injures

---

[20] Although the Court has now disposed of Wichansky's only remaining federal law claim, the Court will continue to exercise jurisdiction over Wichansky's state law claims in the interest of judicial economy, with the exception of his claim for damages based on default of the state court judgment. *See Schneider v. TRW, Inc.*, 938 F.2d 986, 994 (9th Cir. 1991); 28 U.S.C. § 1367(c)(3).

public interests.") (citation and quotation marks omitted); *Rhoads v. Harvey Publ'ns, Inc.*, 700 P.2d 840, 846-47 (Ariz. Ct. App. 1984) (constructive fraud is "failure to make a full and truthful disclosure of all material facts" in breach of fiduciary duty).  To establish justifiable reliance, a party must show that he acted or refrained from acting in reliance on the relevant misrepresentation, and that he was justified in doing so.  *See* Restatement (Second) of Torts § 537 (1977) [hereinafter "Restatement"]; *St. Joseph's Hosp. & Med. Ctr. v. Reserve Life Ins. Co.*, 742 P.2d 808, 817 (Ariz. 1987).

Wichansky alleges that Zowine committed constructive fraud by making six misrepresentations to Wichansky:  (1) that their partnership and friendship were over because Wichansky questioned Zowine's gambling; (2) that Zowine would ensure the billing improprieties would be fully investigated; (3) that Zowine was not responsible for the billing improprieties; (4) that Wichansky was responsible for the billing improprieties; (5) that Wichansky managed MGA billing; and (6) that Wichansky was weak (using a profane word).  Doc. 291 at 22.  But Wichansky does not identify any action he took or refrained from taking in reliance on these alleged misrepresentations. His complaint does not offer any theory of justifiable reliance.  Doc. 160, ¶¶ 474-479. And, in response to Defendants' motion for summary judgment, he offers only the following: "[Wichansky] justifiably relied on Zowine as a partner, friend[,] and the best man at his wedding.  Whatever their problems were, Wichansky could rely on Zowine's assurances, statements, and adherence to his duties and obligations."  Doc. 291 at 21; *see also* Doc. 303 at 16.  These statements assert Wichansky's right to rely on Zowine, but do not identify any action he took in reliance on Zowine's alleged misrepresentations.

At oral argument, Wichansky argued that his reliance consisted of seeking dissolution of Zoel, a step that ultimately harmed Wichansky.  But such a step could not have been taken in justifiable reliance on any of the six alleged misrepresentations.

The first alleged misrepresentation by Zowine – that their friendship and partnership were over – cannot even be characterized as a misrepresentation unless Wichansky is arguing that Zowine actually wanted to remain friends and partners with

1   Wichansky.  Such an argument, of course, is entirely inconsistent with Wichansky's

2   primary contentions in this case that Zowine physically assaulted him, defrauded him,

3   defamed him, breached fiduciary duties owed to him, and engaged in a campaign of

4   chaos and terror against him.  It also conflicts with Wichansky's avowal to the state court

5   that he and Zowine had reached a deadlock in their relationship.  Given the abundance of

6   evidence that Wichansky himself has presented in this case, no reasonable jury could

7   conclude that Zowine really wanted to be friends and partners with Wichansky, but

8   deceptively led Wichansky to believe otherwise through a serious of tortious actions

9   against Wichansky.

10      The second and third alleged misrepresentations – that Zowine would investigate

11  billing improprieties and was not responsible for those improprieties – did not lead

12  Wichansky to seek dissolution of the company.  Wichansky claims that it was the

13  campaign of chaos and terror that caused him to file the petition for dissolution.  He does

14  not claim, nor could he plausibly claim, that he sought dissolution because he thought

15  Zowine was *not* involved in billing fraud and *would* investigate that fraud.

16      Nor could Wichansky have justifiably relied on the fourth through sixth alleged

17  misrepresentations in seeking to dissolve Zoel.   Those misrepresentations – that

18  Wichansky was responsible for the billing improprieties, managed MGA billing, and was

19  weak – were not believed by Wichansky.  To this day he disputes them.  Nor has

20  Wichansky claimed that he sought dissolution because Zowine convinced him that he

21  (Wichansky) was actually responsible for the fraud or was weak.

22      Because Wichansky cannot show that he justifiably relied on any of these alleged

23  misrepresentations in seeking to dissolve Zoel, his claim for constructive fraud cannot

24  stand.  *Sw. Non-Profit Hous. Corp. v. Nowak*, 322 P.3d 204, 212 (Ariz. Ct. App. 2014)

25  (defendant was entitled to summary judgment on fraudulent misrepresentation claim

26  where plaintiff failed to establish that it took any specific action based on defendant's

27  misrepresentation).   This is particularly true given that Wichansky must establish

28  justifiable reliance and other elements of his constructive fraud claim by clear and

convincing evidence.  *See Anderson*, 477 U.S. at 254-55 ("in ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden"); *Brazee v. Morris*, 204 P.2d 475, 476 (Ariz. 1949) (fraud must be established by clear and convincing evidence).

At oral argument, Wichansky's counsel presented one additional theory of constructive fraud.  He claimed that Zowine's harassment of Wichansky and Zowine's cover-up of the billing fraud, when viewed in totality, constituted a careless or intentional omission that amounted to constructive fraud.  The omission, he claimed, was Zowine's failure to disclose that his abusive conduct and cover-up were designed to drive Wichansky to seek dissolution of the company.  Wichansky's counsel suggested that Wichansky justifiably relied on this omission in petitioning for dissolution of Zoel.  There are at least two problems with this argument.

First, it is not contained in Wichansky's summary judgment briefing.  His response to Defendant's motion for summary judgment uses the word "omission" only once, in connection with Zowine's involvement in the billing fraud and his alleged misrepresentation that he would investigate it.  Doc. 291 at 21.  Wichansky's motion for summary judgment does not use the word "omission" even once (Doc. 273), and his reply mentions it one time, in the same language used in his response to Defendants' motion (Doc. 303 at 16).  Nowhere do Wichansky's briefs assert that the totality of Zowine's wrongful conduct amounted to an omission that constituted constructive fraud.

Second, Zowine's alleged conduct was just that – conduct.  It was not an omission upon which Wichansky could have justifiably relied.  General misconduct and threats do not give rise to an action for fraud.  *See, e.g.*, *Fiorillo v. Winiker*, 85 F. Supp. 3d 565, 574 (D. Mass. 2015) (applying Massachusetts law); *see generally Rhoads*, 700 P.2d at 846-47 (constructive fraud is "failure to make a full and truthful disclosure of all material facts" in breach of fiduciary duty).

The Court concludes that Defendants are entitled to summary judgment on Wichansky's constructive fraud claims.

**D.    Defamation.**

Count Eleven of Wichansky's second amended complaint asserts a claim for defamation.  Doc. 160, ¶¶ 480-492.  A person commits the tort of defamation of a private individual when he publishes a false and defamatory statement about the individual to a third party with knowledge of the statement's falsity or with negligent disregard for its truthfulness.  *See Peagler v. Phx. Newspapers, Inc.*, 560 P.2d 1216, 1222 (Ariz. 1977) (citing Restatement § 580B).  A claim for defamation must establish either that the statement gave rise to damages or is harmful per se.  Restatement § 558(d).

Wichansky contends that Zowine defamed him by approaching one of Wichansky's friends and misrepresenting that Wichansky's wife was having an affair, and that Wichansky's child was the product of that affair.  Doc. 291 at 30.  Defendants assert that this alleged statement is unsupported by evidence.  Doc. 275 at 22.  In response, Wichansky fails to provide any evidence to support this claim.  *See* Doc. 291 at 30 (citing Doc. 292, ¶ 103), and Doc. 292, ¶ 103 (citing no evidence and asserting only that "Defendant cannot deny" that the alleged statement was made).  Defendants are entitled to summary judgment on this alleged statement.  *Celotex*, 477 U.S. at 322 (summary judgment appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

Defendants also contend that they are entitled to summary judgment with respect to this statement because Wichansky has not shown any damages.  Doc. 275 at 23.  Wichansky concedes that he has not shown damages, but argues that "damages are not a required element of the claim."  Doc. 291 at 22-23 (citing *Peagler*, 560 P.2d at 1223 ("a publication which impeaches the honesty, integrity, or reputation of a person is libelous per se and actionable without proof of special damages")).  But because Wichansky's claim alleges slander, not libel, the quoted passage from *Peagler* is inapposite.  Wichansky's own brief acknowledges that defamation requires a showing that "plaintiff was damaged as a result of the statement."  Doc. 291 at 30.  Alternatively, a plaintiff may

establish slander per se if the communication falsely imputes to the plaintiff (1) a criminal offense, (2) a loathsome disease, (3) a matter incompatible with his business, trade, profession, or office, or (4) serious sexual misconduct.  Restatement § 570.  The alleged defamatory statement does not fall within any of these categories.  It imputes sexual misconduct to Wichansky's wife, not to Wichansky.  Because Wichansky has not shown either damages or slander per se, he has not stated a viable claim for defamation with respect to this statement.

Wichansky points to three additional statements which he alleges are defamatory.  Doc. 291 at 30.  Each of these statements asserts that Wichansky's allegations of fraud are unfounded.   The first is a letter from MGA to its customers suggesting that Wichansky's allegations of billing fraud at MGA were unfounded.  Doc. 292-1 at 207.  The second is a letter from Zowine's attorney, Julie Nelson, stating that "Mr. Zowine has been a victim of Mr. Wichansky's business litigation strategy."  *Id.* at 82.  The third is an email from an MGA employee to an employee of Phoenix Children's Hospital suggesting that Wichansky alleged fraud "to promote his personal interests in the business litigation."  *Id.* at 220.

Defendants counter that none of these claims can survive because MGA, Ms. Nelson, and the MGA employee are not defendants in this action.  Doc. 307 at 13.  The Court agrees.  Wichansky has not cited any authority for the proposition that Zowine should be liable for all of the statements of all of his agents or employees, or that it is appropriate to pierce the corporate veil to impose liability on Zowine for a statement made by MGA.  *See* Doc. 291 at 30-31.  Though a principal may be liable for defamatory statements made by his agent in certain circumstances, *see* Restatement of Agency § 247 (1933), Wichansky fails even to cite this authority, let alone to show that the predicates to liability under this authority exist here.  Because the Court concludes that Defendants are entitled to summary judgment on this basis, it declines to reach Defendants' other argument that these claims are not viable because the statements in question are mere expressions of opinion.  Doc. 307 at 13.

1   The Court will grant summary judgment on Wichansky's defamation claim.

2   **E.      Assault and Battery.**

3       A person commits the tort of battery when he intentionally causes another to

4   experience harmful or offensive contact.  Restatement § 18.  A person commits the tort of

5   assault when he acts with the intent to cause another to experience tortious contact or the

6   apprehension of imminent tortious contact, and the other does experience such

7   apprehension.  *Id.* § 21.

8       In response to Defendants' motion for summary judgment on this claim,

9   Wichansky identifies only one incident.[21]   On November 12, 2011, Zowine allegedly

10  pulled up next to Wichansky's car, threatened to kill him, shouted obscenities, and spit in

11  his face.  *See* Doc. 291 at 31; Doc. 276, ¶¶ 114-15; Doc. 160, ¶ 223.

12      Defendants argue that Wichansky's assault claims are barred by this Court's

13  June 17, 2015 order, which precluded Wichansky from pursuing "any mental-health

14  related claims or damages."  *See* Doc. 275 at 23 (citing Doc. 150).  The Court issued this

15  order because Wichansky placed his mental health at issue in his claim for intentional

16  infliction of emotional distress ("IIED"), but was unwilling to allow discovery of his

17  mental health records.  The Court granted Wichansky's request to delete the IIED claim

18  and ordered that Defendants would not be permitted to conduct any "discovery into

19  Plaintiff's mental state, mental health, or treatment related thereto" as long as Wichansky

20  refrained from pursuing "any mental-health related claims or damages."  Doc 150.

21      This order precludes Wichansky from pursuing emotional distress damages for his

22  assault claim for the same reason Wichansky cannot pursue his IIED claim.  *See Johnson

23  v. Pankratz*, 2 P.3d 1266, 1268 (Ariz. Ct. App. 2000) (Arizona law allows damages for

24  mental distress resulting from assault).  But the Court's previous ruling does not preclude

25  a claim for assault altogether.  An assault may be established if the defendant's act would

26

27      [21] Wichansky's amended complaint identifies a January 19, 2011 assault and
    another incident on April 6, 2011.  Doc. 160, ¶¶ 493-505.  These incidents are not
28  mentioned in Wichansky's response to Defendants' motion for summary judgment
    (Doc. 291 at 31) and are, in any event, barred by the two-year statute of limitations
    for assault and battery.  *See* A.R.S. § 12-542(1).

have placed a person of ordinary courage in apprehension of imminent tortious contact. *Cf.* Restatement § 27 (plaintiff's abnormal sensitivity may be relevant if defendant's conduct would *not* have caused apprehension in person of ordinary courage).   And a plaintiff can recover damages for assault other than mental distress.  *See, e.g.*, 6 Am. Jur. 2d Assault and Battery § 137 ("Nominal damages may be awarded in an action for assault and battery where no actual damage has been inflicted"); *id.* § 142 (punitive damages available to victim of assault or battery in most jurisdictions).

Defendants also contend that they are entitled to summary judgment on Wichansky's battery claim because Wichansky has not presented evidence that Zowine intended to spit on Wichansky.  Doc. 275 at 20.  But "[q]uestions involving a person's state of mind . . . are generally factual issues inappropriate for resolution by summary judgment," *Braxton-Secret v. Robins Co.*, 769 F.2d 528, 531 (9th Cir. 1985), and Defendants do not explain why a reasonable jury would be unable to infer tortious intent from the alleged conduct.

Because Wichansky has made no attempt to defend them, the Court will grant summary judgment on all of his assault and battery claims other than the November 12, 2011 incident.  Defendants have not shown that they are entitled to summary judgment on the assault and battery claim related to that incident.

**F.      Intentional Interference with Contract.**

Counts Fourteen and Fifteen of Wichansky's second amended complaint assert claims for intentional interference with existing and prospective contractual relations. Doc. 160, ¶¶ 510-525.  A claim of tortious interference must establish "the existence of a valid contractual relationship or business expectancy; the interferer's knowledge of the relationship or expectancy; intentional interference inducing or causing a breach or termination of the relationship or expectancy; and resultant damage to the party whose relationship or expectancy has been disrupted."  *Dube v. Likins*, 167 P.3d 93, 98 (Ariz. Ct. App. 2007).  To prevail on a claim for tortious interference, the plaintiff must identify a "specific relationship with which the defendant interfered."  *Id.* at 101.

Defendants argue that Wichansky has not identified any specific relationships with which they interfered.  Doc. 275 at 24-25.  In his one-paragraph response, Wichansky asserts only that Defendants committed tortious interference by making defamatory statements about Wichansky.  Doc. 291 at 31.  He does not identify or provide evidence of any specific contractual relations or business expectancies with which Defendants interfered.  Defendants are entitled to summary judgment on this claim.  *Celotex*, 477 U.S. at 322.

### G.    Aiding and Abetting.

Defendants move for summary judgment on Wichansky's claims against all Defendants except Zowine for aiding and abetting.  *See* Doc. 160, ¶¶ 543-548.  A claim for aiding and abetting must establish that (1) the primary tortfeasor committed a tort that caused injury to the plaintiff, (2) the defendant knew that the primary tortfeasor's conduct constituted a breach of duty, and (3) the defendant substantially assisted or encouraged the primary tortfeasor in achieving the breach.  *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 38 P.3d 12, 23 (Ariz. 2002).  The defendant's knowledge "may be inferred from the circumstances."  *Id.*

Defendants argue that they are entitled to summary judgment because Zowine did not commit any tort.  Doc. 275 at 27.  The Court has already determined that a jury must decide whether Zowine breached his fiduciary duties to Wichansky.

Defendants also argue that there is no evidence that Defendants knew they were assisting in the commission of a tort, but they make only the barest of arguments.  *Id.*  They say simply that Wichansky "has not adduced evidence that the Individual Defendants knew they were assisting Zowine in committing a tort."  *Id.*  The Court concludes from all the evidence produced in the summary judgment briefing that a reasonable jury could conclude that Zowine had unusual control over the other Defendants, that they assisted him in billing fraud or in thwarting the work and investigation of the receiver, that they assisted in Zowine's alleged campaign of chaos and terror against Wichansky, and that they knew they were assisting Zowine in the

commission of a tort.   *See, e.g.,* Doc. 292, ¶¶ 33-42, 63-64, 66, 70-102, 107-08. Defendants are not entitled to summary judgment on this claim.

**IV.   Motions in Limine.**

Defendants have filed two motions in limine.   Docs. 263, 264.   One motion will be denied, and the other will be decided later.

Defendants seek to exclude "all evidence that Plaintiff allegedly felt intimidated or manipulated by Defendants' conduct, or that he was otherwise emotionally impacted by Defendants' conduct."   Doc. 263 at 1.   For support, they rely on the Court's June 17, 2015 order discussed above.   As noted, the order precluded either party from putting Wichansky's mental health at issue in this case and precluded Wichansky from recovering any damages for emotional distress.   The order does not prevent either party from presenting evidence about Wichansky's knowledge, motivations, or intentions.   Nor does it prevent either party from making arguments about how a reasonable person in Wichansky's situation would have reacted to Zowine's conduct.   Defendants' argument to the contrary is not well taken, particularly since it contradicts the argument they used in seeking discovery of Wichansky's communications with his former counsel.   *See* Doc. 214-15 (arguing that Wichansky's mental state in seeking dissolution of Zoel is at issue). If Defendants believe that particular evidence or argument at trial implicates Wichansky's mental health, they may object, and the Court will pass upon the objection.

Defendants' second motion (Doc. 264) seeks to exclude a report from Wichansky's expert, Elizabeth Hogue, which opines on Zowine's fiduciary duty to Wichansky and whether Zowine breached this duty.   The Court has had no occasion to consider this report in ruling on the motions for summary judgment, and will address this motion when it considers other motions in limine at the final pretrial conference.

**IT IS ORDERED:**

1.      Wichansky's motion for partial summary judgment (Doc. 273) is **denied.**

2.      Defendants' motion for summary judgment (Doc. 275) is **granted** with respect to Wichansky's claims for (a) violation of the CFAA,

1  (b) constructive fraud, (c) defamation, (d) intentional interference,
2  (e) unjust enrichment, (f) intrusion upon seclusion, (g) prima facie tort, and
3  (h) breaches of fiduciary duty consisting of assaults and harassment,
4  resulting in immediate injury and occurring before June 14, 2011.
5  Summary judgment is also granted on Wichansky's damages claims for
6  attorneys' fees, loss of equity in Zoel, and doubling of his lost income.
7  Wichansky's claim for damages based on default on the state court
8  judgment is dismissed without prejudice.  Defendants' motion is otherwise
9  **denied.**

10  3.  Defendants' motion in limine at Doc. 263 is **denied**.

11  4.  The parties will be limited to eight motions in limine per side (not counting
12  Doc. 264).  The motions must conform to the Court's order setting the final
13  pretrial conference.

14  5.  The Court will schedule a final pretrial conference by separate order.

15  Dated this 11th day of December, 2015.

_____
David G. Campbell
United States District Judge