WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Marc A. Wichansky,<br><br>                 Plaintiff,<br><br>v.<br><br>David T. Zowine, et al.,<br><br>                 Defendants. | No. CV-13-01208-PHX-DGC<br><br>**ORDER ON PRETRIAL MATTERS** |

The parties have filed a proposed final pretrial order, a number of motions in limine ("MIL"), a motion to dismiss, and motions for sanctions based on spoliation of evidence. The Court held a final pretrial conference on March 18, 2016. Doc. 387. This order will set forth the Court's rulings on various pretrial matters.

**A.   Trial Matters.**

     1.    <u>Trial Time</u>.

Judge Robert Oberbilig of the Maricopa County Superior Court referred to this dispute as a "business divorce" (Doc. 332-1 at 2), and his description is apt. The parties are fighting the bitterest of business divorces, and this is only one of several lawsuits between them. The amended complaint is almost 100 pages long with 548 paragraphs of allegations. Doc. 160. The parties have filed 71 motions to date. The Court, which seeks to avoid delay and expense by hearing discovery disputes in telephone conferences without the filing of motions (allowing expedited briefing where needed), has held 10

separate discovery dispute conference calls with parties.

The Court has now dismissed or entered summary judgment on Plaintiff's claims for (1) violation of the False Claims Act, (2) violation of the Computer Fraud and Abuse Act ("CFAA"), (3) retaliation in violation of the CFAA, (4) securities fraud, (5) obstruction of justice, (6) unjust enrichment, (7) intrusion upon seclusion, (8) prima facie tort, (9) intentional infliction of emotional distress, (10) breach of fiduciary duty resulting in immediate physical injuries or emotional distress, (11) constructive fraud, (12) defamation, (13) assault and battery other than one spitting incident, and (14) intentional interference with contract.  Docs. 49, 82, 310.  The only claims remaining in this case are breach of fiduciary duty, aiding and abetting the breach, and battery for one spitting incident.

One would think that with 14 claims resolved and only three remaining, the parties would narrow their efforts, but they have not.  Their proposed final pretrial order identifies more than 2,700 exhibits for trial and designates more than 10,500 pages of deposition transcripts.  The pretrial motions addressed in this order include approximately 3,000 pages of materials.  Plaintiff suggests that he needs 182 hours of trial time to present his case – the equivalent of 33 trial days, which would take more than two months of trial at four days per week.  Doc. 345-1 at 60-61.  Defendants suggest the trial should take 17 trial days.  *Id.* at 61.

The Court is convinced that this case can be tried fully and effectively in 10 full trial days, not counting jury selection or deliberation.  Plaintiff claims that Defendant Zowine duped him into seeking dissolution of the parties' jointly-owned company, a dissolution that resulted in Defendant Zowine being permitted under Arizona law to buy Plaintiff's interest in the company.  After a five day trial, Judge Oberbilig set the value of Plaintiff's interest in the company at $5,000,000.  Plaintiff claims that Zowine's intentional and calculated harassment caused Plaintiff to file for dissolution of the company and cost Plaintiff his future earnings and various other costs.  The trial in this case, therefore, will be about whether Plaintiff was duped by Zowine into seeking

dissolution of the company and, if so, how much he was damaged. Plaintiff claims that Zowine engaged in the duping to cover up fraud he was committing within the company. The trial will also include one battery claim based on one spitting incident.

The Court will allot 28 hours of trial time to Plaintiff and 27 hours to Defendants, which will include opening and closing statements, direct examination, and cross examination. The Court will keep track of each side's time and inform the parties daily of how much time they have used so they can budget their time accordingly.

Despite the ultra-litigious nature of this case, the Court is still striving to achieve Rule 1's goal of a "just, speedy, and inexpensive determination" of this action. The Court reminds the parties and counsel that they too have a duty to achieve this goal. Rule 1 requires "the court *and the parties*" to work toward this end. Fed. R. Civ. P. 1 (emphasis added). The Advisory Committee Note to Rule 1 makes clear that "the parties share the responsibility" to achieve Rule 1's goal, and emphasizes that "[e]ffective advocacy is consistent with – and indeed depends upon – cooperative and proportional use" of the rules of procedure. *Id.*, Adv. Committee Note (2015). The parties should cooperate during trial to minimize delay and wasted time. Stipulations should be made on matters not disputed and on evidentiary foundations that clearly could be laid but would only consume valuable time before the jury. Each side shall also provide the opposing side with 24 hours' notice of the witnesses who will be called on a given day.

2. The parties' proposed final pretrial order (Doc. 345-1) is approved by the Court as the final pretrial order in this case. The order shall govern the presentation of evidence and other trial issues, and, pursuant to Rule 16(e) of the Federal Rules of Civil Procedure, shall be modified only to prevent manifest injustice. Evidence, objections, legal arguments, and relief not requested or identified in the order shall not be available at trial, except to prevent manifest injustice.

**B.    Pretrial Motions.**

1. Plaintiff's MIL 1 regarding AHCCS settlement agreement. Doc. 326.

Plaintiff asks the Court to exclude the settlement agreement between MGA Home

1  Healthcare, LLC and AHCCCS, and specifically the statement in the agreement that, "based on the records reviewed, AHCCCS found no evidence that the Provider [MGA] committed fraud." Doc. 326-1 at 2.

Rule 408 provides that evidence of "accepting" valuable consideration "in compromising" a claim is not admissible "on behalf of any party" for the purpose of proving or disproving the "validity . . . of a disputed claim." Fed. R. Evid. 408(a)(1). Defendants clearly want to introduce the quoted statement from the MGA-AHCCCS compromise to disprove the validity of Wichansky's fraud allegation.

The Ninth Circuit has held that Rule 408 applies to settlements entered into between one of the parties to the litigation and a third party – in this case, between MGA and AHCCCS. *Hudspeth v. C.I.R.*, 914 F.2d 1207, 1213 (9th Cir. 1990); *United States v. Contra Costa Water Dist.*, 678 F.2d 90, 92 (9th Cir. 1982). And courts in this circuit have applied this rule even when the party seeking to introduce the compromise is one of the parties that entered into it. *McDevitt v. Guenther*, 522 F. Supp. 2d 1272, 1284-85 (D. Haw. 2007) (barring introduction of settlement by party to the settlement with a third person); *see also* 2-408 Weinstein's Federal Evidence § 408.04 (2015) ("Evidence of a completed compromise of a claim arising out of the same transaction between a third person and a party to the suit being litigated is also inadmissible."). What is more, Defendants' own case, *Option Resource Group v. Chambers Development Co.*, 967 F. Supp. 846, 851 (W.D. Pa. 1996), held that a settlement agreement with the SEC was inadmissible under Rule 408. The case admitted separate administrative findings made by the SEC after taking evidence, but the fraud statement in the settlement agreement between MGA and AHCCCS does not constitute a separate finding by AHCCCS – it is part of the settlement itself.

Plaintiff's MIL 1 (Doc. 326) is **granted**.

2.   Plaintiff's MIL 2 regarding settlement and mediation. Doc. 327.

Plaintiff asks the Court to exclude from evidence any discussions or documents prepared for settlement negotiations or mediation. Rule 408 prohibits introduction of

1 settlement negotiations or agreements to prove or disprove the validity or amount of a
2 disputed claim, but states that such evidence may be admitted for "another purpose."
3 Fed. R. Evid. 408(b).  Because Plaintiff alleges that Defendant Zowine duped him into
4 seeking dissolution of Zoel, Plaintiff's state of mind in seeking the dissolution is relevant
5 and constitutes "another purpose."  To the extent settlement-related documents are
6 introduced for this purpose, they might be admissible at trial.  The Court therefore cannot
7 grant Plaintiff's motion to exclude all such evidence.

8 Plaintiff also argues that communications related to mediation must be excluded
9 from evidence under A.R.S. § 12-2238(B).  But Plaintiff fails to identify precisely when
10 mediation stopped and started or which documents it encompassed.  The Court therefore
11 cannot determine that any specific document is excluded by this statute.  If Plaintiff
12 opposes the introduction of any specific documents at trial on the basis of this statute, he
13 should be prepared to show that it was part of a mediation communication.

14 Plaintiff argues that these documents must be excluded under Rule 403, but that is
15 a decision that must be made during the course of trial, not on the basis of incomplete
16 information before the Court now.

17 Plaintiff's MIL 2 (Doc. 327) is **denied**.

18 3. Plaintiff's MIL 3 regarding character attacks.  Doc. 328.

19 Plaintiff asks the Court to exclude various categories of evidence, including
20 difficulties in his marriage or family, gambling or drug use, vulgar language, and theft of
21 company information.  At the same time, Plaintiff makes clear that he intends to
22 introduce the same kind of evidence regarding Defendant Zowine.  Because the Court
23 will be far better equipped to resolve this issue during trial, it will deny Plaintiff's MIL 3.

24 The Court makes two observations.  First, the Court will not permit this trial to
25 become a mudslinging contest.  Evidence of this nature will be admissible only if
26 strongly relevant to a clearly identified issue the jury must decide.  Otherwise, its
27 probative value will be substantially outweighed by the danger of unfair prejudice.  Fed.
28 R. Evid. 403.  Second, counsel should not mention such evidence to the jury unless it is

1  squarely and directly relevant to an issue to be decided by the jury. If counsel has any
2  doubt, they should raise the issue with the Court outside the hearing of the jury.

3  Plaintiff's MIL 3 (Doc. 328) is **denied**.

4.  Plaintiff's MIL 4 regarding Rochelle Glassman. Doc. 329.

The Court will not exclude the testimony of Ms. Glassman. She has 30 years of experience in medical billing, owns and manages a medical billing firm, and has in the past been engaged by attorneys to determine whether medical billing fraud has been committed. An expert may be qualified by such knowledge, skill, and experience. Fed. R. Evid. 702. As one notable commentator has observed, the 2000 amendments to Rule 702 (adopting the *Daubert* standard) "were not intended to signal an abandonment of the liberal attitude of the Federal Rules of Evidence toward the admissibility of opinion testimony." 4 J. Weinstein & M. Berger, Weinstein's Federal Evidence § 702.05[2][a] (2d. ed. 2015). Nor were they intended to suggest that courts should place less reliance on the traditional tools of the adversary system for finding truth. As the Supreme Court explained in *Daubert*, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert v. Merrill Dow Pharm., Inc.*, 509 U.S. 579, 596 (1993).

Plaintiff's MIL 4 (Doc. 329) is **denied**.

5.  Plaintiff's MIL 5 to exclude testimony. Doc. 330.

Plaintiff seeks to preclude Defendants from calling attorney Julie Nelson during their case in chief, and to preclude her and other witnesses from testifying about matters as to which the attorney-client privilege or work-product protection were invoked during depositions. Clearly, witnesses should not be permitted to testify during trial about matters that were shielded from discovery by privilege assertions, but Plaintiff provides no basis upon which the Court can make decisions about specific questions or answers. Defendants state that they do not intend to elicit privileged testimony withheld during depositions. Doc. 353 at 4.

1    Defendants have disclosed documents during this litigation in which Ms. Nelson
2 made assertions regarding Plaintiff's allegations of fraud.  Doc. 354.  The Court will not
3 preclude Ms. Nelson from testifying about these disclosed matters.  Nor will the Court
4 preclude her from testifying about matters as to which the privilege was not invoked
5 during her deposition.  In light of these conclusions, the Court will deny Plaintiff's MIL 5
6 (Doc. 330).  Plaintiff may make specific objections at trial.
7    Plaintiff's MIL 5 (Doc. 330) is **denied**.
8    6.   Plaintiff's MIL 6 to exclude David Schwickerath.  Doc. 331.
9    Plaintiff seeks to exclude the expert testimony of David Schwickerath during
10 Defendants' case-in-chief because he is a rebuttal expert, but Defendants' entire case will
11 be rebuttal of Plaintiff's case.  This is not a basis for exclusion.  Plaintiff argues that
12 Schwickerath should be excluded because he did not do his own calculation of Plaintiff's
13 damages, but that was not why he was retained.  He was retained to rebut the opinions of
14 Plaintiff's expert, and he may critique those opinions without giving his own opinion of
15 damages.  Finally, Plaintiff argues that Schwickerath's report is devoid of methodology
16 and does not follow industry standards.  The Court has reviewed the report and disagrees.
17 Schwickerath will be permitted to testify as a rebuttal expert.  He and all other witnesses
18 will be limited to opinions stated in their reports and depositions (*see* Case Management
19 Order, Doc. 93 at 3, ¶ 5(f)).
20    Plaintiff's MIL 6 (Doc. 331) is **denied**.
21    7.   Plaintiff's MIL 7 regarding state court valuation.  Doc. 332.
22    Plaintiff asks the Court to exclude evidence of the state court's $5,000,000
23 valuation of his interest in Zoel.  He argues that the valuation is hearsay, irrelevant, and
24 excludable under Rule 403.  The Court does not agree.  The Court finds that Rule 807
25 overcomes Plaintiff's hearsay objection for the following reasons.  (1) The Superior
26 Court ruling has substantial guarantees of trustworthiness.  It was entered by a state court
27 trial judge after a five-day trial where Plaintiff and Defendants were represented by
28 counsel and afforded a full opportunity to present evidence and argument regarding the

- 7 -

value of Plaintiff's interest in Zoel.  (2) The ruling is offered as evidence of a material fact – the amount Plaintiff was awarded for his share of Zoel in the proceeding Plaintiff initiated.  Plaintiff claims that Defendant Zowine duped him into initiating the proceeding and that he was damaged as a result.  For the jurors to assess the credibility of this claim, they will need to know something about the state court proceeding and its outcome.  Judge Oberbilig's decision sets forth the outcome.  (3) The written decision is the clearest and most concise indication of the proceeding's outcome, and is more probative on this point than other evidence Defendants might present.  (4) Admitting the state court decision will best serve the purposes of the rules of evidence and the interests of justice. *See* Fed. R. Evid. 807(a); *see also United States v. Bonds*, 608 F.3d 495, 501 (9th Cir. 2010) (Rule 807 exists to provide judges a "fair degree of latitude" and "flexibility" to admit statements that would otherwise be hearsay) (citations omitted).

The Court finds the decision relevant for the reasons discussed above.  The Court does not find that the danger of unfair prejudice substantially outweighs the probative value of this evidence.  The decision sets forth the judge's valuation, and Plaintiff will be able to address it during the trial.  The Court also concludes, however, that if Defendants present the decision and its $5,000,000 valuation, Plaintiff should be permitted to present evidence that he has been paid only $1,400,000 of this amount so far.  Preventing Plaintiff from doing so would leave the jury with an incomplete picture of the state proceedings' outcome.

Plaintiff's MIL 7 (Doc. 332) is **denied**.

8. Plaintiff's MIL 8 regarding overbilling at HHL.  Doc. 334.

Plaintiff asks the Court to preclude Defendant Martha Leon and other witnesses from testifying inconsistently with, or explaining, Ms. Leon's deposition testimony about the location and nature of the rounding error she says caused MGA to submit incorrect billing information to DDD.  Plaintiff also appears to ask the Court to preclude Defendants from using any spreadsheets that were not produced during discovery, but does not identify a specific trial exhibit.  To the extent Ms. Leon or other witnesses testify

1  inconsistently with her or their depositions, Plaintiff can impeach them with that fact. To
2  the extent she claims that the rounding error was in a spreadsheet other than those
3  examined by Plaintiff's expert (which apparently did not contain such an error), Plaintiff
4  can impeach her with her prior testimony. The Court cannot conclude that it should
5  preclude a witness from testifying inconsistently with a deposition. Depositions are
6  taken, in part, to deal with that eventuality. Fed. R. Civ. P. 32(a)(2). If Defendants
7  attempt to admit a document that was not produced in response to a document production
8  request, Plaintiff can object and the Court will rule.

9  Plaintiff also asks the Court to exclude Defendants from introducing documents
10 they successfully sought to withhold during discovery, but again fails to identify any
11 specific trial exhibits. Defendants will not be permitted to introduce exhibits at trial that
12 they have failed to include in the final pretrial order unless they can make the high
13 showing required by Rule 16(e), and Plaintiff will be fully heard on any such attempt.

14 Plaintiff's MIL 8 (Doc. 334) is **denied**.

15 9. Defendants' MIL 2 regarding Elizabeth Hogue. Doc. 264.

16 Defendants ask the Court to preclude the expert testimony of attorney Elizabeth
17 Hogue because it offers legal opinions. "[A]n expert witness cannot give an opinion as to
18 her *legal conclusion*, i.e., an opinion on an ultimate issue of law. Similarly, instructing
19 the jury as to the applicable law is the distinct and exclusive province of the court."
20 *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008)
21 (emphasis in original; quotation marks and citation omitted). "Accordingly, federal
22 courts typically prohibit lawyers, professors, and other experts from interpreting the law
23 for the court or from advising the court about how the law should apply to the facts of a
24 particular case." *Pinal Creek Grp. v. Newmont Mining Corp.*, 352 F. Supp. 2d 1037,
25 1042 (D. Ariz. 2005).

26 Ms. Hogue's report and supplemental report explain the law related to breaches of
27 fiduciary duty. She states that a director owes a fiduciary duty, she defines the duty, she
28 explains what obligations the duty places on a director, she states that the Patient

Protection and Affordable Care Act imposes specific obligations, she identifies the "minimum requirement" the Act imposes in fraud and abuse programs, and she opines on the legal requirements for an internal fraud investigation. Doc 296-1 at 4-6, 88-90. These are all impermissible legal opinions.

Ms. Hogue also, albeit briefly, purports to apply the law to the facts of this case and opines that Defendant Zowine breached his fiduciary duties. In rendering these opinions, Ms. Hogue relies on the fact testimony of various witnesses, applies the law to that testimony, and finds a breach. This application of the law to the facts is the province of the jury and impermissible legal expert testimony. *See Pinal Creek*, 352 F. Supp. 2d at 1042-44 (bar on improper legal opinions includes "legal expert testimony concerning both what the law is and how it should be applied to the facts of a case"); *Peterson v. City of Plymouth*, 60 F.3d 469, 475 (8th Cir. 1995) (finding that the trial court erred in allowing testimony that police officers' conduct satisfied Fourth Amendment requirements); *Montgomery v. Aetna Cas. and Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990) (finding that court abused its discretion by allowing witness to testify that defendant had a duty to hire tax counsel, stating "[a] witness also may not testify to the legal implications of conduct"); *Marx & Co. v. Diners' Club, Inc.*, 550 F.2d 505, 508-11 (2d Cir. 1977) (holding that the trial court erred in permitting a lawyer to offer his opinions concerning securities law and the application of that law to the contract in dispute).

Plaintiff argues that an expert may testify about corporate norms, but that is not the nature of Ms. Hogue's testimony. She testifies as a lawyer about the law of fiduciary duties and the legal requirements of a federal statute, and opines that Zowine's conduct violated those laws. She offers legal opinions, not factual testimony about corporate norms.

Defendants' MIL 2 (Doc. 264) is **granted**.

10. Defendants' MIL 3 regarding Wendy Britton. Doc. 322.

Defendants argue that expert Wendy Britton should be excluded from trial

because she applies an incorrect definition of fraud that omits scienter, shifts the burden to Defendants to disprove fraud, and fails to account for alternative explanations. The Court is not persuaded.

Questions and answers during Ms. Britton's deposition were at times confusing, but she did acknowledge that fraud requires acts performed knowingly, willfully, and intentionally. Doc. 362-1 at 27-28 (counsel reads definition of fraud that includes "knowingly, willfully, and intentionally" and asks: "Do you agree with this definition? A: Yes.").

The Court does not agree that Ms. Britton is seeking to establish a presumption of scienter. She explained in her deposition that billing the same charge to two or three different insurance companies, repeatedly, suggests to her that the action is intentional and fraudulent. Doc. 322-1 at 33-34. This is Ms. Britton's opinion, not a legal presumption. If Defendants disagree, they can cross-examine Ms. Britton, present contrary evidence, and argue their points to the jury.

Nor does the Court accept Defendants' argument that Ms. Britton refused to consider alternative explanations. She stated that a consistent practice of sending the same claim to multiple insurance companies for payment would, in her view, suggest intentional fraud. *Id.* at 47. Defendants can cross-examine and argue the issue to the jury. This is not a basis for excluding testimony.

Defendants' MIL 3 (Doc. 322) is **denied**.

11.   Defendants' MIL 4 regarding prior bad acts. Doc. 335.

Defendants ask the Court to preclude evidence of Defendant Zowine's past acts of aggression toward third parties and a video showing Defendant Mayo's martial arts skills. The Court cannot at this point determine whether this evidence could be viewed by the jury as something other than propensity evidence, which is not allowed under Rule 404(b), or whether the probative value of this evidence would be substantially outweighed by the danger of unfair prejudice under Rule 403. Because of the risk of either outcome, the Court will grant the motion in

limine provisionally. Once trial is underway and the Court understands the nature of the case more fully, Plaintiff can raise with the Court – outside the hearing of the jury – the possibility of introducing this evidence.

Defendants' MIL 4 (Doc. 335) is **granted** provisionally.

12. Defendants' MIL 5 regarding fraud testimony. Doc. 323.

Defendants ask the Court to preclude Plaintiff and his experts and witnesses from using the word "fraud" when discussing MGA billing practices. Defendants argue that use of such a word could be misleading if the witness does not know the applicable definition of fraud, and could be unfairly prejudicial. The Court is not persuaded. Plaintiff alleges in this case that Defendants knew and approved of billing fraud at MGA. That is one of the grounds for Plaintiff's breach of fiduciary duty claim. In addition, the factual recitals of relevant conversations, and some of the documents to be admitted in evidence, include the word "fraud." Fraud clearly is relevant in this case, and the Court cannot conclude that use of the word during trial will result in unfair prejudice that substantially outweighs its probative value.

Defendants' MIL 5 (Doc. 323) is **denied**.

13. Defendants' MIL 6 regarding state court rulings. Doc. 324.

Defendants ask the Court to expressly recognize a series of rulings from the state court litigation, instruct the jury regarding those rulings and their binding effect in this litigation, and preclude Plaintiff from presenting evidence to dispute the rulings. Defendants include denial of a TRO request, denial of Plaintiff's attempt to withdraw his dissolution petition, and the payment terms for the buyout of Plaintiff's interest in Zoel. Defendants have not demonstrated the relevance of these rulings or provided any explanation as to why the Court should give the jury detailed instructions regarding them. As the Court concluded above, the outcome of the state proceeding – Judge Oberbilig's valuation of Plaintiff's interest in Zoel – is relevant. But the Court cannot at this time conclude that the other rulings are relevant and therefore will not enter Defendants' requested order.

Defendants' MIL 6 (Doc. 324) is **denied**.

14. Defendants' MIL 7 regarding damages evidence. Doc. 336.

Defendants ask the Court to preclude Plaintiff from making any damages claim based on profit distributions he would have received from Zoel. At the final pretrial conference, the Court asked the parties to provide further briefing on this issue. The Court will set forth its tentative view of this matter to aid the parties in their briefing, but will withhold final judgment until it has reviewed the additional briefs and the full expert opinions from the state proceeding.

Defendants argue that the Court's summary judgment ruling permitting Plaintiff to recover lost income is limited to salary paid to Plaintiff by Zoel and does not include distributions of corporate profits. Plaintiff argues that he may recover lost profit distributions as well as lost salary.

In the summary judgment briefing, Defendants argued that Plaintiff could recover no "lost income" because the state court had valued his interest in Zoel on an income basis and Plaintiff therefore had been paid for any lost income. Plaintiff did not address this argument in his response. The Court nonetheless found the argument unpersuasive because the state court valuation focused on the income of Zoel, not the income of Plaintiff. Doc. 310 at 11. As the Court explained:

> [E]xperts in the state court used an income approach to valuing Zoel, but that approach appears to have focused on revenues and after-tax earnings of Zoel. Doc. 276-2 at 36-37. Wichansky seeks to recover income he personally would have earned from Zoel. Such income, if paid as wages, would be deducted before the after-tax earnings of the company are calculated and would not be included in a valuation based on such after-tax earnings. As a result, Defendants have not shown that Wichansky's claim for lost income was already included in the state court's valuation of Zoel. The Court will not enter summary judgment on this claim.

*Id.*

As this statement makes clear, the "income" that the Court found to be a

proper part of this case was income paid to Plaintiff that would be deducted from Zoel's revenues before Zoel's earnings were calculated. The Court specifically identified this as income "paid as wages." *Id.* Because the corporate earnings were already taken into account in valuing Zoel and determining the amount Plaintiff should be paid for his interest, those earnings could not be recovered a second time by Plaintiff in this case. But wages paid to Plaintiff would not have been included in corporate earnings, Plaintiff would not have been compensated in the state court for the loss of those wages, and Plaintiff could therefore seek in this case to recover the wages he lost as a result of Defendants' actions.

In light of the motion in limine, the Court reviewed again the summary judgment materials related to the state court valuation. Those materials suggest that the income-valuation approach used by the parties' experts in the state court proceeding, and relied upon by Judge Oberbilig in his valuation ruling, looked to income earned by the corporation – annual corporate profits. Plaintiff's expert defined that approach as follows: "The Income Approach estimates enterprise value by considering the *stream of economic benefits that accrues to the owner*." Doc. 276-2 at 36 (emphasis added). The expert "estimate[d] equity value by discounting the *future stream of projected equity cash flows* to its present value at an appropriate rate of return." *Id.* (emphasis added). The reference to "equity cash flows" clearly seems to mean profits distributed to shareholders. Indeed, Plaintiff's expert report states that "[a] firm's net cash flow represents funds available to be distributed to shareholders." *Id.* "These cash flows are then discounted to their present value and converted to value at the required rate of return." *Id.* Thus, it appears that Plaintiff's own valuation of his interest in Zoel looked to the corporate profits that would have been available to him as an owner, discounted them to the present, and used that amount to value the business. Under this approach, Plaintiff's future profit distributions have already been included in the value he received for his interest in Zoel.

The Court thus concludes, tentatively, that Plaintiff cannot in this case recover any damages for lost corporate profits.  If Plaintiff prevails, his lost-income recovery will be limited to salary he would have been paid by Zoel had he not sought dissolution of the company.  The Court will revisit this conclusion after reviewing the parties' supplemental briefing.

Defendants also argue that Plaintiff should not be permitted to recover expert witness fees incurred in this litigation.  The Court agrees.  "[E]xpert fees are not recoverable as costs absent explicit statutory authority," *L & W Supply Corp. v. Acuity*, 475 F.3d 737, 740 (6th Cir. 2007), and Plaintiff identifies no such authority.  Thus, in presenting damages evidence to the jury, Plaintiff should limit his claim for expert fees to those incurred in connection with the dissolution of Zoel and his investigation of alleged wrongdoing of the company.  They should not include fees incurred in this case.

Finally, Defendants argue that Plaintiff should not be permitted to recover any "contingent liabilities" from the state court action.  This argument resulted in a lengthy discussion during the final pretrial conference.  Plaintiff agreed during the discussion that he may seek five categories of damages at trial: (1) lost salary; (2) lost profit distributions (if allowed after the additional briefing discussed above); (3) expert and receiver fees other than those incurred in this case; (4) any damages for the spitting assault that remains in this case; and (5) punitive damages.  Because none of these constitutes contingent liabilities from the state proceeding, this part of Defendants' motion will be denied.

Defendants' MIL 7 (Doc. 336) is **granted** in part with respect to expert witness fees and **denied** with respect to contingent liabilities.  The Court will rule on the lost income issue after further briefing.

15. Defendants' MIL 8 regarding harassing conduct. Doc. 325.

Defendants ask the Court to preclude Plaintiff from presenting any evidence of Defendants' harassing conduct after March 22, 2012, the day on which Zowine

- 15 -

took sole ownership of Zoel.  They also ask the Court to limit evidence of harassing conduct from March 31, 2011 (the day Plaintiff filed for dissolution) to March 22, 2012, to events that interfered with Plaintiff's efforts to investigate billing issues in the company.

Plaintiff argues that all of Defendants' outrageous conduct, including up to the present time, must be presented to the jury to show Defendants' intent and to explain why Plaintiff was afraid of Defendants.  Plaintiff seeks to admit more than 100 instances of harassing conduct.  Doc. 368 at 3.

Defendants' harassment of Plaintiff prior to the date he sought dissolution of Zoel is relevant to his claim that Zowine duped him, through harassment, into seeking dissolution.  Harassment after that date is not relevant to Plaintiff's claim that he sought dissolution because of the campaign of harassment.  Defendants' harassing interference into investigations of Zoel's billings after that date may be relevant in light of Plaintiff's claim that Zowine sought to prevent the investigation, but this is a breach of fiduciary duty claim, and Zowine did not owe fiduciary duties to Plaintiff after the company was sold to Zowine.  Doc. 310 at 7 n.4.  The Court therefore holds that (1) Plaintiff may not present evidence of harassing conduct after March 22, 2012 (the last day Plaintiff had an ownership interest in the company); (2) Plaintiff's evidence of harassing conduct between March 31, 2011 and March 22, 2012 must be related to efforts by Zowine or those in concert with him to interfere with investigations of Zoel's billing, whether by Plaintiff or the Receiver; and (3) Plaintiff may present evidence regarding the assault incident on November 12, 2011.  If Plaintiff believes other harassment evidence becomes relevant during the course of the trial, he may raise that issue with the Court outside the hearing of the jury.

Defendants' MIL 8 (Doc. 325) is **granted**.

16. Defendants' MIL 9 regarding medical and family evidence. Doc. 337. The Court will grant this motion.  Plaintiff claims that evidence of Zowine's

medical history and mental health issues, and of his alleged abuse of his own family members, is relevant for the jury to understand why Plaintiff was afraid of Zowine and to bolster Plaintiff's claim that Zowine intentionally abused Plaintiff in an effort to drive him from the company. The Court concludes that a jury would be unable to view this as anything other than prohibited propensity evidence – that Zowine had an abusive character and acted in accordance with that character when he dealt with Plaintiff. Fed. R. Evid. 404(b). The Court also concludes than any probative value of this evidence would be substantially outweighed by the danger of unfair prejudice – the jury ruling against Zowine because he is an unsavory person.

Defendants' MIL 9 (Doc. 337) is **granted**.

17. Defendants' MIL 10 regarding evidence of improprieties. Doc. 333.

Defendants seek to exclude evidence of allegations or investigations of fraudulent or improper company behavior after Plaintiff's interest in Zoel was sold. Plaintiff argues that this evidence is relevant to his allegation that Zowine was engaged in fraudulent operations at the company and ousted Plaintiff in order to prevent their discovery and continue engaging in them. Although the Court finds that the evidence has some probative value, the Court concludes that any such value is substantially outweighed by the danger of undue delay, wasting time, and needlessly presenting cumulative evidence. Fed. R. Evid. 403. This case should not devolve into a series of mini trials over allegations of fraud occurring at times unrelated to the events at issue.

Defendants' MIL 10 (Doc. 333) is **granted**.

18. Defendants' motion to dismiss or stay. Doc. 370.

Defendants argues that the Court should decline to exercise continuing jurisdiction over this case under 28 U.S.C. § 1367. Alternatively, they argue that the Court should stay this proceeding pending the outcome of state court litigation. Defendants base this motion on the fact that the parties have ongoing litigation in

state court, Plaintiff apparently has asserted new claims in that litigation arising from the facts at issue in this case, and Defendants believe Plaintiff is forum shopping and seeking to make an end-run around some of this Court's rulings.

The Court denied this motion at the final pretrial conference. The Court has already concluded that it should continue to exercise jurisdiction over the remaining state law claims in the interest of judicial economy. Doc. 310 at 21 n.20. Defendants argue that judicial economy would be served by dismissing this action and allowing the parties to continue their slug-fest in state court, or by staying this case until the state court litigation (now more than five years old) is resolved. The Court could not disagree more strongly. The best way to serve judicial economy is to push this case through to a final conclusion.

Defendants express concern about inconsistent court rulings. But the state court has very capable judges who fully understand principles of res judicata and collateral estoppel.

Finally, Defendants express concern that Plaintiff will re-litigate in the upcoming trial matters previously decided by Judge Oberbilig. The Court has no intention of re-litigating matters decided in state court.

19. <u>Motions for sanctions</u>. Docs. 319, 375.

Defendants allege that Plaintiff made an audio recording of an altercation between him and Defendant Zowine on January 19, 2011, and yet failed to produce it in this litigation. Defendants contend that Plaintiff's assertion that he gave the recording to the police is disproven by the fact that it is not mentioned in the police report for the incident and is not in possession of the Phoenix police department. Defendants ask the Court to give an adverse inference instruction and award monetary sanctions.

In an apparent tit-for-tat, Plaintiff responds by seeking sanctions of his own, alleging that Defendants failed to preserve photographs and videotapes they made during various events. Plaintiff also asks for an adverse inference instruction.

Both sides agree that (1) the relevancy of allegedly lost information and (2) prejudice to the opposing side are important considerations in any sanctions decision. The Court finds little prejudice and only marginal relevance in the allegedly lost materials. The Court also notes that it generally should impose the least harsh sanction that can provide an adequate remedy. *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 534 (D. Md. 2010).[1]

        a.      <u>Defendants' Motion</u>. Doc. 319.

Even if the other elements of spoliation could be satisfied, the Court finds that an adverse inference instruction and monetary sanctions in Defendants' favor would not be warranted. Plaintiff and another witness testified in their depositions that the audio tape recorded Zowine telling Plaintiff to let go of him and stop hitting him – admissions that support Defendants' version of the altercation. Defendants thus have not been seriously prejudiced by loss of the recording. In light of this fact, the Court concludes that Defendants' grievance about the missing recording can be presented to the jury through evidence and argument, with no need for the Court to place its thumb on the scale with an adverse inference instruction. Defendants may present evidence that Plaintiff recorded the altercation, that Plaintiff asserts he gave the recording to the police, that the police have no record of receiving the recording (assuming Defendants can provide admissible evidence on this point and they preserved it in the final pretrial order), and that the recording contained information contrary to Plaintiff's description of the altercation. This evidence, when combined with testimony about the contents of the recording, will sufficiently overcome any prejudice Defendants have suffered from loss of the recording.

Defendants' motion for sanctions (Doc. 319) is **denied**.

---

[1] The Court notes that recently amended Rule 37(e) of the Federal Rules of Civil Procedure does not apply because the parties do not contend that the lost information constitutes electronically stored information.

      b. <u>Plaintiff's Motion</u>. Doc. 375.

The missing videotapes identified by Plaintiff allegedly included Zowine and associates coming to the Zoel office in April 2011 and treating employees in an aggressive and hostile manner, Zowine taking a picture of Richard Eden while belittling him at a deposition in May 2013, and Zowine recording Eden and his family at a Christmas event in 2011 while harassing them. Doc. 375 at 11-12. The recordings concern events Plaintiff did not witness, two of which concerned Richard Eden and are not related to this case.

The parties dispute when recordings were made, whether they were preserved, and their relevancy. Because all of the allegedly recorded events concerned incidents that occurred after Plaintiff had petitioned for dissolution of Zoel, and none of them concerned alleged interference with an investigation of Zoel, the Court concludes – for the same reason as its ruling on Defendants' MIL 8 – that they are not relevant to this case. For this reason, even if spoliation could be shown – something not at all clear from the disputed evidence – the Court would decline to given an adverse inference instruction.

Plaintiff's motion for sanctions (Doc. 375) is **denied**.

Dated this 22nd day of March, 2016.

_____
David G. Campbell
United States District Judge

- 20 -