**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Marc A. Wichansky, | No. CV-13-01208-PHX-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| David T. Zowine, et al., | |
| Defendants. | |

On February 29, 2016, the parties submitted their joint proposed jury instructions. Doc. 342. During trial, the Court circulated its proposed final jury instructions to the parties. Doc. 454. The Court heard arguments on challenges to several of its proposed final jury instructions on April 11, 2016. Doc. 455. The Court made revisions, circulated another draft, and heard further arguments on April 18, 2016. Doc. 478. This order will describe the Court's ruling on jury instruction issues raised by the parties.

**I.      Unclean Hands.**

Defendants proposed a jury instruction on the unclean hands defense, to which Plaintiff objected. Doc. 342 at 106-08. In the parties' joint proposed pretrial order, Plaintiff asserted that Defendants waived their unclean hands affirmative defense by failing to raise it in a responsive pleading. Doc. 345-1 at 36-38. Under Federal Rule of Civil Procedure 8(c), a party must "must affirmatively state any avoidance or affirmative defense" in responding to a pleading. Defendants responded, without citation of

authority, that the doctrine of unclean hands is not an affirmative defense and therefore has not been waived.  *Id.* at 38.   During trial, Defendants cited five cases for the proposition that unclean hands is an equitable defense that may be raised by defendants at any time or raised *sua sponte* by the court even if it was not raised in a pleading or subsequent motions.  *See Gratreak v. N. Pac. Lumber Co.*, 609 P.2d 375 (Or. Ct. App. 1980); *Clark v. Watts*, 77 A.2d 188 (N.J. Super. Ct. 1950); *Bishop v. Bishop*, 257 F.2d 495 (3d Cir. 1958); *Conn. Telephone & Elec. Co. v. Auto. Equip. Co.*, 14 F.2d 957 (D.N.J. 1926); *De Garmo v. Goldman*, 123 P.2d 1 (Cal. 1942).

Whether the doctrine of uncleans hands may be waived depends on the type of relief sought.  In the cases cited by Defendants, the only relief sought was equitable. *Clark*, 77 A.2d at 188-89 (injunctive relief); *Bishop*, 257 F.2d at 499 (cancellation of deed and other instruments); *Conn. Telephone*, 14 F.2d at 967 (injunctive relief, accounting); *De Garmo*, 123 P.2d at 4 (injunctive relief).  In one of the cases cited by Defendants, the court declined to apply unclean hands because the plaintiff was seeking a legal remedy rather than equitable relief.  *Gratreak*, 609 P.2d at 378 ("'In other words, [unclean hands] defenses do not bar rights; *they bar particular remedies*, while leaving other remedies available.  Thus the clean hands rules may bar the plaintiff's recovery of specific performance, but leave him a perfectly good claim for damages at law.'") (emphasis added) (quoting Dobbs, Law of Remedies § 2.4 at 45 (1st ed. 1973)). Defendants have cited no case where the doctrine of unclean hands was raised late in a case as a defense to a legal remedy.

The Court declined to give an unclean hands instruction to the jury for two reasons.  First, Plaintiff in this case seeks the legal remedy of compensatory damages. Arizona cases, like others, have recognized that unclean hands is a defense to equitable relief.  *See Tripati v. State, Ariz. Dep't of Corr.*, 16 P.3d 783, 786 (Ariz. Ct. App. 2000) ("The doctrine of 'unclean hands' is an equitable defense to a claim seeking equitable relief.") (emphasis omitted; citation omitted); *see also* Dobbs, Law of Remedies § 2.4(2) at 93 (2d ed. 1993) ("The most orthodox view of the unclean hands doctrine makes it an

equitable defense, that is, one that can be raised to defeat an equitable remedy, but not one that defeats other remedies.  Courts repeatedly refer to the defense in that light.").

Second, even if unclean hands could be asserted in response to the legal remedy sought by Plaintiff, it was not raised in Defendants' answer.  Arizona cases refer to unclean hands as an affirmative defense.  *See Nat'l Bank of Ariz. v. Thruston*, 180 P.3d 977, 979, ¶ 9 (Ariz. Ct. App. 2008) ("The Thrustons answered, denied the existence of a default, and asserted five affirmative defenses: 'prior' breach of the duty of good faith and fair dealing, 'prior' breach of contract, unclean hands, duress, and estoppel."); *Wieman v. Roysden*, 802 P.2d 432, 433 (Ariz. Ct. App. 1990) ("the Arbuckles claimed as affirmative defenses . . . the doctrine[] of unclean hands").  Because it was not raised by Defendants until the final pretrial order, long after pleadings and discovery had closed, the Court concludes that the unclean hands defense has been waived.  As noted in an earlier order, Defendants were allowed during trial to present evidence of Plaintiff's alleged improper conduct in connection with their general defense of the case.  Doc. 434.

## II.     Fiduciary Duties of Directors and Officers.

The parties submitted proposed jury instructions addressing the fiduciary duties of directors and officers.  *See* Doc. 342 at 52-61.  One of the key points of disagreement was whether the duties were defined by statute or common law.  The Court concluded that the fiduciary duties of directors and officers are defined by statute in Arizona.  *See* A.R.S. §§ 10-830 (directors), 10-842 (officers).  No Arizona case holds that the common law of director and officer duties survives these statutes, and commentators suggest it does not. *See* 6 Ariz. Prac., Corporate Practice § 7:48 ("Accordingly in Arizona there is no longer a common law claim for 'breach of fiduciary duty' or 'breach of common law duty of care' with respect to directors; a properly-plead claim must allege breach of the statutory standard."); *Id.* § 7:54 ("The Act, in addition to addressing care in the decision-making process, requires a director to act in 'good faith' and 'in a manner the director reasonably believes to be in the best interest of the corporation.'  The statute thus codifies and preempts the common law duty of loyalty."); 9 Ariz. Prac., Business Law Deskbook

§ 2:13 (2015-16 ed.) ("A.R.S. § 10-830 supplies the sole standard of conduct of directors. All claims made against directors relating to their conduct, except as specifically governed by other statutes, must be based on a breach or alleged breach of A.R.S. § 10-830, as there no longer exists a separate common law duty of loyalty.  Prior case law may help define concepts such as 'good faith' or 'best interests' of the corporation and should still be used for such purposes.").

**III.    Fiduciary Duties in Self-Interested Transactions.**

Plaintiff proposed jury instructions addressing a director's fiduciary duties in self-interested transactions.  Doc. 342 at 60, 83-85.  Plaintiff seeks to invoke common law duties, including the burden shifting that occurred under the common law when a director participated in a self-interested transaction.  The Court concludes that Zowine's fiduciary duties in his role as a director and officer are defined by A.R.S. §§ 10-830, 10-842, and that a separate instruction based on common law fiduciary duties or self-interested transactions is not appropriate.

As noted, Zowine's fiduciary duties as an officer or director are governed by statute.  A.R.S. §§ 10-830, 10-842.  Plaintiff argues that these statutes codify the common law business judgment rule.  This is not explicitly stated in the statutory text, but Arizona cases do refer to these statutes as codifying the business judgment rule.  *See, e.g.*, *Phx. Payment Sols., Inc. v. Towner*, No. CV08-00651-PHX-DGC, 2009 WL 3241788, at *7 (D. Ariz. Oct. 2, 2009) ("The parties vigorously dispute whether the 'business judgment rule' applies to Towner's alleged conduct and, if so, whether there is sufficient evidence to overcome the presumption of good faith afforded by that rule.") (citing A.R.S. § 10-830(D); other citations omitted).

Under the common law, a director could be stripped of the protections of the business judgment rule if he acted in a grossly negligent manner.  *See F.D.I.C. v. Jackson*, 133 F.3d 694, 700 (9th Cir. 1998) ("We therefore find that under Arizona law, where the business judgment rule applies to the conduct of a director, a showing of gross negligence is necessary to strip the director of the rule's protection.").  Plaintiff cites no

authority for the proposition that the statutes somehow incorporate this gross negligence trigger. The statutes are silent as to gross negligence, *see* A.R.S. §§ 10-830(D), 10-842(D), and the Court can find no indication that the Legislature intended the protections of the statutes to fall away in instances of gross negligence. The Court concludes that §§ 10-830 and 10-842, rather than the common law, govern Zowine's conduct as an officer and director.

Under the common law, a director could also lose the protection of the business judgment rule by engaging in a self-interested transaction. The Court concludes that this common law doctrine does not apply for several reasons. First, a director's conflicting interest transaction is statutorily defined in Arizona. *See* A.R.S. § 10-860. The definition applies only to corporate transactions, and there is no such transaction in this case.[1] Although Plaintiff claims that Zowine duped him into a chain of events that resulted in Plaintiff selling his shares, the sales transaction was with Zowine, not the corporation. Second, § 10-860 and related provisions do not say that a director or officer loses the protections of § 10-830 and § 10-842 by engaging in a self-interested transaction. *See* A.R.S. §§ 10-860 *et seq.* Third, even if the common law addressing self-interested transactions was not abrogated by A.R.S. § 10-860, it would be similarly inapplicable because the common law also speaks to corporate transactions. *See Kadish v. Phx.-Scotts. Sports Co.*, 466 P.2d 794, 797 (Ariz. Ct. App. 1970). Again, that is not this case.

The Court recognizes that this conclusion is in tension with one of its prior orders in *Best Western International, Inc. v. Furber*, No. CV06-01537-PHX-DGC, 2008 WL 2045701 (D. Ariz. May 12, 2008), cited in the parties' proposed jury instructions. Doc. 342 at 60, 84. In that case, the Court discussed the common law business judgment rule for directors' self-interested transactions without reference to A.R.S. § 10-860. 2008 WL 2045701, at *4-6. But the parties in *Best Western* (like the parties in this case) did

---

[1] "'Director's conflicting interest transaction' with respect to a corporation means a *transaction* effected or proposed to be effected *by the corporation, by a subsidiary of the corporation or by any other entity in which the corporation has a controlling interest* respecting which a director of the corporation has a conflicting interest." A.R.S. § 10-860(2) (emphasis added).

not raise A.R.S. § 10-860.  Having now found the statute, the Court believes that the legal standard in *Best Western* may not be a correct formulation of Arizona law with respect to self-interested transactions and the business judgment rule.

**IV.      Termination of Fiduciary Duties.**

Defendants contend that Zowine's fiduciary duties ended when his relationship with Plaintiff became hostile and their dealings were at arms' length.  Doc. 342 at 91. Defendants rely on the minority view which, according to the Court's research, is accepted only in New Jersey and Utah.  *See Walter v. Holiday Inns, Inc.*, 784 F. Supp. 1159, 1167-68 (D.N.J. 1992); *Sugarhouse Fin. Co. v. Anderson*, 610 P.2d 1369, 1373 (Utah 1980).  The parties have provided no Arizona authority on this point.

The weight of authority holds – correctly in the Court's view – that fiduciary duties do not end when relationships become strained.  *See Ajettix Inc. v. Raub*, 804 N.Y.S.2d 580, 587 (Sup. Ct. 2005) ("The law clearly supports Plaintiff's contention. Defendant's fiduciary obligations to [Plaintiff] arose from the status of defendant as a corporate officer and director . . . and were not extinguished by his acrimonious relationship with plaintiff so long as defendant did not withdraw from the corporation . . . .  Beyond that, the relationship between shareholders in a closed corporation, vis-á-vis each other, is akin to that between partners and imposes a high degree of fidelity and good will . . . .  Even on dissolution, partners owe a continuing fiduciary duty to one another with respect to dealings effecting the winding up of the partnership and the preservation of the partnership assets.") (quotation marks and citations omitted); *see also In re Perry*, 423 B.R. 215, 285 (Bankr. S.D. Tex. 2010); *Curley v. Kaiser*, 962 A.2d 167, 174 (Conn. 2009); *In re S & D Foods, Inc.*, 144 B.R. 121, 160 (Bankr. D. Colo. 1992); *Hagshenas v. Gaylord*, 557 N.E.2d 316, 323-24 (Ill. Ct. App. 1990); *Everest Inv'rs 8 v. McNeil Partners*, 114 Cal. App. 411, 424-25 (2003).

The Court concludes that the majority position cited by Plaintiff is the proper standard and concludes that it would likely be adopted in Arizona.  Thus, Zowine's fiduciary duties terminated when he purchased Wichansky's shares of Zoel.

**V.      Shareholders' Fiduciary Duties.**

Defendants assert that a separate jury instruction for the fiduciary duties of shareholders is not warranted, arguing that shareholders in a closely-held corporation do not owe each other fiduciary duties.  The Court does not agree.

As an initial matter, Defendants dispute whether Zoel is, in fact, a closely-held corporation.  Zoel, however, was owned by only two people – Wichansky and Zowine, each holding 50% of the stock.  The Court previously concluded that Zoel is a closely-held corporation according to the common law definition.  *See* Doc. 310 at 14 n.12. Defendants contend that because Zoel was not formed under Arizona's close corporation statutes, it is not a closely-held corporation.  Although there is such a thing as a statutory close corporation in Arizona, it does not displace the common law doctrines applicable to closely-held corporations.  *Dooley v. O'Brien*, 244 P.3d 586, 592, ¶ 22 (Ariz. Ct. App. 2010) ("While Arizona created the statutory close corporation in 1976 [A.R.S. §§ 10-1801 through 10-1818], the statutes did not displace the common-law doctrines applicable to closely-held corporations.") (citation omitted).  "[A]t common law, the attributes of a close corporation are that (1) the shareholders are few in number, often two or three; (2) the shareholders usually live in the same geographical area, know each other, and are well acquainted with each others' skills as they relate to the corporation; (3) all or most of the shareholders are active in the business, usually serving as directors or officers or as management; and (4) there is not an established market for the corporate stock." *Albers v. Edelson Tech. Partners L.P.*, 31 P.3d 821, 830, ¶ 38 (Ariz. Ct. App. 2001) (citations omitted).  These factors accurately describe Zoel.

There is authority in Arizona for the proposition that substantial shareholders in a closely-held corporation owe each other fiduciary duties.  *See Mims v. Valley Nat'l Bank*, 481 P.2d 876, 878-79 (Ariz. Ct. App. 1971) (holding that a shareholder in a closely-held corporation who has the "ability [or] right to manage and control a corporation" owes to the company and its shareholders the same fiduciary duties as the corporation's officers and directors); *Funk v. Spalding*, 246 P.2d 184, 187 (Ariz. 1952) (finding that fiduciary

- 7 -

relationship existed between 50-50 shareholders in a corporation that had been run like a partnership where "[a]s a result of their long association [the shareholders] had absolute confidence in each other"); *Garrett v. Reid-Cashion Land & Cattle Co.*, 270 P. 1044, 1050 (Ariz. 1928) (discussing "the fiduciary relation of the majority stockholders and board of directors to the minority stockholders, and the duties growing out of that relation"); *see also AMERCO v. Shoen*, 907 P.2d 536 (Ariz. Ct. App. 1995) (family held corporation brought suit against dissident shareholders, claiming breach of fiduciary duty; court of appeals affirmed the outcome at trial).

Many other cases hold that shareholders, particularly in closely-held corporations, owe fiduciary duties to each other. For example, in *Donahue v. Rodd Electrotype Co. of New England*, 328 N.E.2d 505 (Mass. 1975), the Massachusetts Supreme Court held that "stockholders in close corporations must discharge their management and stockholder responsibilities in conformity with this strict good faith standard." *Id*. at 515. *Donahue* relied on the resemblance between close corporations and partnerships, the need for trust and confidence in such companies, and the inherent risk of loss due to shareholders' inability to recoup their investments. *Id*. Other cases recognize the same duties. *See, e.g., Ajettix*, 804 N.Y.S.2d at 587 ("the relationship between shareholders in a closed corporation, vis-á-vis each other, is akin to that between partners and imposes a high degree of fidelity and good will"); *Hollis v. Hill*, 232 F.3d 460, 468 (5th Cir. 2000) (noting that *Donahue*'s "recognition of special rules of fiduciary duty applicable to close corporations has gained widespread acceptance."); *Orchard v. Covelli*, 590 F. Supp. 1548, 1559 (W.D. Pa. 1984) ("The duty of utmost good faith and loyalty in the context of closely held corporations has been recognized by a number of courts confronting similar fact situations."); 2 Oppression of Min. Shareholders and LLC Members § 7:5 ("Not surprisingly, courts often apply partnership principles to close corporations and impose on participants in a close corporation the same strict fiduciary duties to each other that exist among partners.").

Defendants argue that the Arizona Legislature intended to eliminate fiduciary

duties among shareholders in closely-held corporations when it codified the duties of corporate officers and directors in A.R.S. §§ 10-830 and 10-842, while at the same time declining to create corresponding statutory duties for shareholders. The Court is not convinced. When pressed, Defendants could not identify anything in the legislative history to suggest that this was, in fact, the Arizona Legislature's intent. Defendants ask the Court to draw this conclusion from the absence of any shareholder statutory duties in the corporate portions of the Arizona statutes, but such an absence could just as easily mean that the Legislature did not intend to extinguish the common law fiduciary duties applied to shareholders. The Court will not presume that the Arizona Legislature abrogated the common law of shareholder fiduciary duties without some clear indication of such intent. The Court also notes that Arizona courts have continued to apply common law fiduciary duties to shareholders after the passage of A.R.S. §§ 10-830 and 10-842. *See Sports Imaging of Ariz., L.L.C. v. 1993 CKC Tr.*, No. 1 CA-CV 05-0205, 2008 WL 4448063, at *19, ¶ 91 (Ariz. Ct. App. Sept. 30, 2008 (unpublished) ("shareholders that have the ability to control a corporation owe a fiduciary duty to the corporation and other shareholders) (citing *Mims*, 482 P.2d at 878; *Funk*, 246 P.2d at 187).[2] In addition, when courts in other states have recognized shareholder fiduciary duties with which the legislature disagrees, the legislature has acted to expressly revise the law in response. *See McLaughlin v. Schenk*, 299 P.3d 1139, 1143 (Utah 2013) (In response to Utah Supreme Court case recognizing shareholder fiduciary duties, Utah Legislature passed a statute providing "that '[a] shareholder of a corporation, when acting solely in the capacity of a shareholder, has no fiduciary duty or other similar duty to any other shareholder of the corporation, including not having a duty of care, loyalty, or utmost good faith.'") (citing Utah Code § 16-10a-622(3)). The Arizona Legislature has taken no similar action in response to Arizona cases such as *Mims* and *Funk*.

---

[2] The Court recognizes that *Sports Imaging* is an unpublished decision that does not establish legal precedent. The Court cites it only for the *fact* that Arizona courts have continued to apply common law fiduciary duties to shareholders after the passage of A.R.S. §§ 10-830 and 10-842.

1    For these reasons, the Court cannot conclude that the common law fiduciary duties
2    of shareholders have been eclipsed by A.R.S. §§ 10-830, 10-842.  Those statutes apply to
3    officers and directors; they do not mention shareholders.  Nor do the Arizona close
4    corporation statutes suggest that §§ 10-830, 10-842 apply to shareholders.  Because
5    Arizona case law continues to recognize a fiduciary duty on the part of shareholders that
6    differs from the statutory duty of officers and directors, the Court gave a separate jury
7    instruction for the shareholder duty.  And because there is no Arizona pattern jury
8    instruction for shareholder fiduciary duties, the Court used the Arizona partnership
9    instruction.  As many of the cases on this subject have noted, the duties of shareholders in
10   a closely held corporation are akin to those of partners.  *See Ajettix*, 804 N.Y.S.2d at 587
11   ("the relationship between shareholders in a closed corporation, vis-á-vis each other, is
12   akin to that between partners and imposes a high degree of fidelity and good will").[3]

## VI.    Aiding and Abetting Breach of Fiduciary Duty.

14   Finally, the Court followed *Security Title Agency, Inc. v. Pope*, 200 P.3d 977
15   (Ariz. Ct. App. 2008), in crafting its instruction on aiding and abetting breach of fiduciary
16   duty.  "Arizona recognizes aiding and abetting as embodied in Restatement" (Second) of
17   Torts § 876(b) (Am. Law Inst. 1979).  *Pope*, 200 P.3d at 988, ¶ 44 (citing *Wells Fargo*
18   *Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Tr. Fund*,
19   38 P.3d 12, 23, ¶ 31 (Ariz. 2002)).  "A claim for aiding and abetting a tort requires proof
20   that (1) the primary tortfeasor has committed a tort causing injury to the plaintiff; (2) the
21   defendant knew the primary tortfeasor breached a duty; (3) the defendant substantially
22   assisted or encouraged the primary tortfeasor in the breach; and (4) a causal relationship

---

[3] In addition, although Zoel was a corporation, both sides of this case relied in their summary judgment briefing on the common law of partnership.  *See, e.g.*, Doc. 291 at 11 (citing *Everest Inv'rs 8 v. McNeil Partners*, 114 Cal. App. 4th 411, 8 Cal. Rptr. 3d 31 (2003)); Doc. 307 at 6 (citing 59 Am Jur. 2d P'ship § 281).  The Court agreed in its summary judgment ruling that the common law of partnership should inform this case because Wichansky and Zowine effectively operated as partners during the course of their business relationship.  *See* Doc. 310 at 15 n.13; *see also Roche v. Golden Sky Lands, Inc.*, 487 P.2d 756, 758 (Ariz. 1971) ("fiduciary relationships recognized and enforceable in equity do not depend upon nomenclature; nor are they necessarily the product of any particular legal relationship") (citation omitted).  This reasoning further supports use of the partnership pattern jury instruction.

exists between the assistance or encouragement and [the primary tortfeasor's] breach." *Id.* (citing *Wells Fargo Bank*, 38 P.3d at 23, ¶ 34; Restatement (Second) of Torts § 876 cmt. d).

A defendant charged with aiding and abetting must have knowledge of the primary violation, which may be inferred from the circumstances. *Pope*, 200 P.3d at 988, ¶ 45 (citing *Wells Fargo Bank*, 38 P.3d at 23, ¶ 36). This, however, does not require proof of actual and complete knowledge of the breach of fiduciary duties. *Id.* (citing *Wells Fargo Bank*, 38 P.3d at 26, ¶ 45). A party charged with aiding and abetting need not know all of the details of the breach of fiduciary duties; the knowledge requirement may be satisfied by demonstrating a general awareness of the primary tortfeasor's conduct. *Id.* at ¶¶ 45-46 (citing *Wells Fargo Bank*, 38 P.3d at 26, ¶ 45; *Dawson v. Withycombe*, 163 P.3d 1034, 1052, ¶ 50 (Ariz. App. 2007)).

"An aiding-and-abetting claim requires proof of a causal connection between the defendant's assistance or encouragement and the primary tortfeasor's commission of the tort, although 'but for' causation is not required." *Pope*, 200 P.3d at 988, ¶ 47 (citing *Wells Fargo Bank*, 38 P.3d at 27, ¶ 54; Restatement (Second) of Torts § 876 cmt. d). The Arizona Court of Appeals held that a trial court correctly instructed a jury on the causation requirement of aiding and abetting a breach of fiduciary duties when it instructed the jury that (1) but for the primary tortfeasor's breach of fiduciary duties to the plaintiff, the plaintiff's damages would not have occurred, and (2) the other defendant's aiding and abetting helped produce those damages. *Id.* at 988-89, ¶¶ 48-49.

Dated this 19th day of April, 2016.

David G. Campbell
United States District Judge