1    **WO**

2

3

4

5

6              **IN THE UNITED STATES DISTRICT COURT**

7                **FOR THE DISTRICT OF ARIZONA**

8

9    Marc A Wichansky,                          No. CV-13-01208-PHX-DGC

10                    Plaintiff,                 **ORDER**

11   v.

12   David T Zowine, et al.,

13                    Defendants.

14

15          This is the second order addressing Defendants' renewed motion for judgment as a

16   matter of law and motion for a new trial.  Docs. 568.  The Court previously ruled on the

17   motion with respect to Defendants Charles Johnson, Pat Shanahan, Martha Leon, and

18   Mike Ilardo.  Doc. 591.  Although the Court addressed issues involving Defendant David

19   Zowine, it did not rule on the liability and damages against David Zowine and his wife

20   because they had filed for bankruptcy.  Doc. 590.  Because the bankruptcy stay has been

21   lifted, the Court now resolves the remaining issues as to the Zowines.  Because the trial

22   concerned the conduct of David Zowine, and his spouse was named only for community

23   property purposes, the remainder of this order will refer to Zowine in the singular.

24   **I.      Incorporation by Reference.**

25          The Court incorporates by reference much of its prior order (Doc. 591) as to

26   Zowine, including the following sections:  Section I (background), Section II (legal

27   standard), Section III (statute of limitations), Section IV (causation), Section V (fiduciary

28   duty jury instructions), and Section VIII (compensatory damages).  The Court will

1    address the punitive damages issues that pertain to Zowine.

2    **II.    Punitive Damages under Rules 50 and 59.**

3        Zowine argues that punitive damages are not appropriate because Plaintiff failed
4    to adduce sufficient evidence that his conduct was "aggravated, outrageous, and
5    performed with an 'evil mind.'"   Doc. 568 at 9.   Zowine seeks relief under both
6    Rules 50(b) and 59(a).

7        Under Rule 50, a court can overturn a jury verdict only if there is no legally
8    sufficient basis for the verdict.  *Costa v. Desert Palace, Inc.*, 299 F.3d 838, 859 (9th Cir.
9    2002).  Under Rule 59(a), a court may appropriately consider a party's claim of excessive
10   damages, *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007), and order a new
11   trial if the award is contrary to the clear weight of the evidence, *Passantino v. Johnson &*
12   *Johnson Consumer Prods.*, 212 F.3d 493, 510 n.15 (9th Cir. 2000).

13       The Court cannot conclude that the jury's assessment of punitive damages against
14   Zowine lacked a legally sufficient basis or was contrary to the clear weight of evidence.
15   As described in Doc. 591, there was sufficient evidence to allow the jury to conclude that
16   Zowine's conduct was aggravated, outrageous, and performed with an evil mind.  Zowine
17   was responsible for Zoel's medical billing division.   Zowine supervised Defendants
18   Charles Johnson and Martha Leon, the two individuals who were chiefly implicated in
19   the medical billing fraud and whom the jury found culpable.   There was evidence that
20   Zowine was involved in covering up the medical billing fraud, and that he attempted to
21   frame other individuals, including Plaintiff and Richard Eden.

22       While Plaintiff was investigating the medical billing fraud, Zowine orchestrated
23   and carried out a campaign to drive Plaintiff from the business.   Zowine engaged in
24   repeated hostile, demeaning, and profane actions toward Plaintiff, often in the presence of
25   others.  Zowine, who is large and imposing, physically assaulted Plaintiff, who is much
26   smaller.  Zowine recruited Charles Johnson to organize and execute a surreptitious office
27   move.  Zowine directed individuals to remove computers from Zoel's office.

28       Examining the evidence in the light most favorable to Plaintiff, the jury reasonably

1    could have concluded that Zowine's conduct was aggravated, outrageous, and performed

2    with an evil mind.  Plaintiff and Zowine were close friends and business associates, and

3    Zowine was even Plaintiff's best man at his wedding.  Zowine nonetheless plotted and

4    executed a campaign of intimidation and harassment intended to drive Plaintiff from the

5    business he co-owned with Zowine.  This is more than mere "deadlock and infighting."

6    Doc. 568 at 9.  This is sufficient to support an award of punitive damages.

7    **III.    Constitutionality of the Punitive Damages.**

8    Zowine argues that the punitive damages award is constitutionally excessive.

9    Doc. 568 at 10-12.  Zowine seeks remittitur or a new trial for the punitive damages

10   assessed against him.

11   **A.    Legal Standard.**

12   "The purpose of punitive damages is not to compensate the plaintiff, but to express

13   society's disapproval of outrageous conduct and to deter such conduct by the defendant

14   and others in the future."  *Hawkins v. Allstate Ins. Co.*, 733 P.2d 1073, 1080 (Ariz. 1987)

15   (citations omitted).  The Due Process Clause of the Fourteenth Amendment "imposes a

16   substantive limit on the size of punitive damages awards."  *Honda Motor Co., Ltd. v.*

17   *Oberg*, 512 U.S. 415, 420 (1994) (citations omitted).  The Supreme Court has provided

18   three guideposts for courts to use when reviewing punitive damages awards, only two of

19   which are relevant here:   "(1) the degree of reprehensibility of the defendant's

20   misconduct; [and] (2) the disparity between the actual or potential harm suffered by the

21   plaintiff and the punitive damages award."[1]   *Sec. Title Agency*, 200 P.3d at 998, ¶ 94

22   (citing *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 418 (2003)).

23   With respect to the first guidepost, courts are directed to consider several factors,

24

25        [1] The third guidepost – the difference between the punitive damages awarded by
26   the jury and the civil penalties authorized or imposed in comparable cases – is not
     relevant when liability is based on a common-law tort.  *Sec. Title Agency*, 200 P.3d at
27   998, ¶ 94 n.19 ("We do not analyze the third guidepost because it neither weighs for nor
     against the punitive damages award in this case.  Aiding and abetting is a common-law
28   tort, and we agree with the Tenth Circuit that 'a violation of common law tort duties
     [may] not lend [itself] to a comparison with statutory penalties.'") (quoting *Cont'l Trend
     Res., Inc. v. Oxy USA Inc.*, 101 F.3d 634, 641 (10th Cir. 1996)).

1    none of which is dispositive on the issue of reprehensibility.  *Id.*, ¶ 95 (citing *State Farm*,

2    538 U.S. at 419).  Courts should consider whether:

> the harm caused was physical as opposed to economic; the tortious conduct
> evinced an indifference to or a reckless disregard of the health or safety of
> others; the target of the conduct had financial vulnerability; the conduct
> involved repeated actions or was an isolated incident; and the harm was the
> result of intentional malice, trickery, or deceit, or mere accident.

7    *Id.* (citing *State Farm*, 538 U.S. at 419).

8    With respect to the second guidepost, in the case of a substantial compensatory

9    damages award, "a 1:1 ratio" between compensatory and punitive damages "is a fair

10   upper limit." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 513 (2008); *see also Sec. Title

11   Agency*, 200 P.3d at 1000-01, ¶¶ 103-08 (reducing punitive damages to $6,100,290,

12   representing a 1:1 ratio to compensatory damages).  The Supreme Court has made clear

13   that there is no bright-line ratio that a punitive damages award may not exceed.  *Sec. Title

14   Agency*, 200 P.3d at 1000, ¶ 103 (citing *State Farm*, 538 U.S. at 424).

15   **B.    David Zowine.**

16   Zowine argues that the punitive damages award against him is unconstitutionally

17   excessive.  Doc. 568 at 12-15.  The Court agrees.

18   With respect to reprehensibility, two factors weigh in favor of punitive damages.

19   First, Zowine's conduct involved repeated actions, rather than an isolated incident.

20   Zowine was implicated in a number of incidents with Plaintiff, including a physical

21   altercation, dozens of insulting communications, and incidents intended to intimidate and

22   humiliate Plaintiff.  Zowine orchestrated a campaign of intimidation and harassment

23   involving several employees loyal to him, including Defendants Johnson, Shanahan, and

24   Ilardo, as well as others.  Each of these individuals, at Zowine's direction, took actions in

25   support of this campaign.  It was clearly not an isolated incident.

26   Second, the harm to Plaintiff resulted from malice, trickery, or deceit, rather than

27   accident.  Zowine oversaw and covered up the medical billing fraud, hindered Plaintiff's

28   investigation of the fraud, and even blamed the fraud on Plaintiff.  Zowine plotted the

1    surreptitious office move and the server removal without Plaintiff's authorization or

2    knowledge.  Zowine's highly offensive communications to Plaintiff, often in front of

3    others, reflected unmitigated malice.  These factors favor the imposition of punitive

4    damages.

5         Considering the ratio between the compensatory and punitive damages, however,

6    the Court finds the punitive damages excessive.  The jury found Zowine responsible for

7    $10,311,400 in the compensatory damages (Doc. 500 at 2, 4), and assessed $14,375,000

8    in punitive damages (*id.* at 2).  This ratio exceeds 1:1.  The Court concludes that the

9    punitive damages assessed against Zowine should be reduced to $10,311,400,

10   representing a 1:1 ratio.  Such a ratio furthers the purposes of punitive damages, respects

11   the jury's assessment of reprehensibility, and preserves Zowine's Fourteenth Amendment

12   rights.

13   **IV.    Security for Stay Pending Appeal.**

14        The Court has previously issued orders addressing the supersedeas bonds required

15   to secure Plaintiff's judgment pending resolution of Defendants' post-trial motion.

16   Docs. 551, 559, 572.  Defendant Zowine has not posted security.  For purposes of appeal,

17   Zowine may post a bond to stay enforcement of the judgment in an amount equal to

18   $20,622,800 – the total of the compensatory damages assessed by the jury and the

19   reduced punitive damages award.

20        **IT IS ORDERED:**

21        1.    Defendant David Zowine's renewed motion for judgment as a matter of law

22   and for a new trial (Doc. 568) is **granted in part** and **denied in part** as set forth above

23   and in in the Court's previous order (Doc. 591).

24        2.    Defendant Zowine may post a bond of $20,622,800 to stay enforcement of

25   the judgment pending appeal.

26

27

28

1        3.      The Clerk is directed to terminate this action.

2      Dated this 11th day of October, 2016.

 

 

 

_____

David G. Campbell
United States District Judge